[No. 32465-9-I. Division One. December 16, 1993.]

HILLTOP TERRACE HOMEOWNER'S ASSOCIATION, ET AL, *Appellants,* v. ISLAND COUNTY, ET AL, *Respondents.*

*Peter J. Eglick,* for appellants.

*Steven G. Jones, Michael K. Vaska, John A. Fandel,* and *Foster Pepper & Shefelman; William Hawkins, Prosecuting Attorney,* and *David L. Jamieson, Deputy,* for repondents.

BAKER, J. — Adjoining landowners appeal a superior court decision upholding the decision of the Island County Board of County Commissioners (BOCC) to grant a conditional use permit for construction of a cellular telephone microwave facility in a rural/residential zone. The permit was originally denied, then resubmitted and approved. Appellants argue the subsequent approval is barred by res judicata. We agree and reverse.

## FACTS

Interstate MobilePhone Company, an affiliate of Cellular One and McCaw Cellular Communications, applied in November 1989 for site plan approval for a microwave tower and mobile telephone cell site on Whidbey Island near Clinton. The proposal was for a 150-foot steel lattice tower, supporting six antennae and four microwave dishes, and a 336-square-foot equipment shelter. A determination of nonsig-

nificance pursuant to the State Environmental Policy Act of 1971 was issued. Following a hearing held on February 1, 1990, the hearing examiner recommended approval to the BOCC.

The BOCC held a public meeting to consider the proposal. A substantial number of local residents opposed the application. They focused on health and safety issues, the need for the facility, the benefit to the community, and compatibility with surrounding areas.[1] The BOCC voted 2 to 1 to reject the hearing examiner's recommendation and disapprove the plan on the basis that the proposed development "would be incompatible with the character of the surrounding permitted uses." The BOCC formally adopted findings and conclusions to that effect on April 9, 1990.

Less than 2 months later, Interstate again submitted an application for site plan approval for the construction of a cellular mobile phone cell site to be located on the property. The second application included the construction of a 150-foot pole which would support a maximum of 15 directional panel antennae or 9 whip antennae, and two microwave dishes. Like the first application, it included a 336-square-foot equipment shelter and a 35-kilowatt generator. The hearing examiner conducted a hearing, but acknowledged that it was an "almost identical" application. The planning staff called it a "reapplication", and the applicant described the differences from the first plan as the monopole in place of the lattice tower, increased setbacks and a relocated access road. The hearing examiner again recommended approval. His written decision of September 26, 1990, described the differences in the two proposals as follows:

> [T]he steel lattice tower originally proposed has been replaced with a cellular telephone pole. Instead of a three-legged steel

---

[1]The area is zoned rural/residential, and the proposed tower is classified as a utility facility, or institutional use, under chapter 17.02.050(b) of the Island County Zoning Ordinance. Institutional uses are permitted in areas zoned rural/residential only after site plan approval for a conditional use. A conditional use may be approved only when the applicant demonstrates that such use will be compatible with the character of existing uses. Island County Code 17.02.050(b).

lattice tower, a solid telephone pole structure 150 feet tall, 18 inches in diameter at the top, constructed out of a galvanized steel, anodized to a slate grey flat finish is proposed. While the differences are not significant, the telephone poles should have less visual impact.

The new proposal moves the cell site more to the center of the parcel. The parcel in question is approximately 5.43 acres. It is approximately 625 feet x 317 feet. The original proposal included setbacks of only 50 feet from the west and east property lines and only 35 feet from the roadway easement on the north. The original Hearing Examiner's recommendation included increasing the setbacks and construction of the access road so as to eliminate visibility from the easement road.

The current proposal locates the cell site 167 feet from the private road along the north property line, 100 feet from the south and west property lines and approximately 525 from the east property line. The increased setbacks will provide better buffering from adjoining properties.

Other than these changes, the proposal is virtually identical to the proposal denied by the Board under SPR 41/89.

The examiner noted that he would leave to the BOCC the question of whether the changes in the proposal were significant enough to allow the BOCC to reconsider its decision only a few months after denying the first proposal.

When the BOCC considered the new proposal, the chairman read into the record a portion of a legal opinion of a county prosecuting attorney which concluded that the doctrines of res judicata and collateral estoppel did not apply in this case. The BOCC did not independently determine the applicability of these doctrines. It voted 2 to 1 to approve the new proposal.

Appellants challenged the BOCC's decision by writ of certiorari. The Superior Court upheld the decision, and this appeal followed.

### Standard of Review

■ RCW 7.16.060 governs judicial review pursuant to a writ of certiorari. Our review is based upon the administrative record and does not rely on the trial court's findings and conclusions. *Concerned Land Owners v. King Cy.*, 64 Wn. App. 768, 772, 827 P.2d 1017, *review denied*, 119 Wn.2d 1008 (1992). On issues of law, this court must determine whether

the decision below was contrary to law. RCW 7.16.120(3). On issues of fact, this court must determine whether the BOCC's findings were supported by substantial evidence contained in the record. RCW 7.16.120(4), (5). *Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 263, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992).

 Appellants claim that the second site plan application was barred by res judicata.

> Res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.

*Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983); *see also U.S. Bank v. Hursey*, 116 Wn.2d 522, 529, 806 P.2d 245 (1991); Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 812 (1984-1985). Where administrative proceedings are quasi judicial and a final decision has been made, judicial doctrines of preclusion apply. *Lejeune*, 64 Wn. App. at 264.

Here, the proceedings were clearly quasi judicial. The dispute is whether the decision on the first application was final, and whether the two applications were identical in subject matter.

### Finality

Island County Code (ICC) 16.19.170 provides:

> The action of the [B]oard [of County Commissioners] in adopting, rejecting, remanding, or modifying a recommendation . . . shall be final and conclusive unless within thirty (30) days from the date of such action the applicant or aggrieved party files a petition with the Island County Superior Court for a writ of certiorari or review.

The commissioners issued a final, written decision, and respondents did not appeal that decision. Instead, Interstate wrote to the BOCC, asking that the commissioners "reconsider [their] tentative decision, reached at the March 26, 1990 meeting, to deny the . . . application." The letter went on to request additional public hearings and an opportunity

to submit additional information on potential mitigation measures.

In reply, the BOCC chairman advised the applicant that the decision was not "tentative", and that it was "not possible for the Board to entertain new information at this late date." The chairman's letter went on to state:

> If you wish to reconsider your application, perhaps relocate it and/or provide for appropriate mitigation, you should not consider it a foregone conclusion that such an application would also be denied. It will be considered on its merits.

Respondent characterizes this as an "invitation" to resubmit its application and as proof that the decision was not final. Appellants characterize the letter as an ex parte contact which is not binding on the BOCC as a whole or on appellants. Appellants point out that in response to the letter, Interstate requested that the BOCC modify its conclusions of law to indicate that its denial was specific only to the particular site and community in question, rather than to all rural residential zones. In that letter, Interstate acknowledged the limited amount of time it had to file an appeal.

The BOCC did not modify its conclusions as requested, and Interstate did not file an appeal within the 30-day time period. Thus, the decision on the first application was final.

### Identity of Subject Matter

The pivotal issue in this case for res judicata purposes is whether the applications were "identical". If so, the BOCC's first decision must be given preclusive effect, and the second application should not have been considered.

■ The proper formulation of the test for determining identity of subject matter in this context appears to be an issue of first impression in our jurisdiction. A review of out-of-state cases shows that the majority view is that a second application for a similar proposal can be considered if there is a "substantial change in circumstances" or a "material change" in the application or in conditions relevant to the

application.[2] There must be a judicious balancing of the competing interests of finality of decisionmaking in the land use arena and the need for communities to assess changing factors such as new technology, evolving public standards of safety and welfare, economic need or environmental concerns. We conclude that final quasi-judicial land use decisions should be subject to reexamination when a party is able to show a substantial change in material, relevant circumstances.

In the case sub judice, the BOCC did not independently decide the issue of whether a sufficiently substantial change in relevant circumstances existed to permit consideration of the new application. If the BOCC had decided that issue, we would be required to determine the appropriate standard by which to review that decision.[3] Because the BOCC did not decide the issue, we must instead determine whether to

---

[2]*See Freeman v. Ithaca Zoning Bd. of Appeals*, 61 A.D.2d 1070, 403 N.Y.S.2d 142 (1978) (there can be a new application and determination when plans materially change, and changing the placement of the parking lot and clinic on a lot were enough to support Board's decision to approve); *Reed v. Planning Bd.*, 120 A.D.2d 510, 501 N.Y.S.2d 710 (1986) (Board should have found material differences in a second subdivision plan where applicants had cured at least two of the Board's initial objections by changing the lot size and meeting technical specifications); *Consiglio v. Board of Zoning Appeals*, 153 Conn. 433, 217 A.2d 64 (1966) (no material changes in applications for a service station where alterations in plans for the driveway and lighting could have been required by the Board as mitigation in the first application); *Laurel Beach Ass'n v. Zoning Bd. of Appeals*, 166 Conn. 385, 349 A.2d 834 (1974) (no material change allowing reversal of a previous application where applicants could not show undue hardship when requesting a variance); *Chatham Corp. v. Beltram*, 243 Md. 138, 220 A.2d 589 (1966) (zoning decision was res judicata where second application covered the same 99 acres as the first, planning commission considered the two applications to be the same, its reports, submissions and conclusions on each were the same); *Woodlawn Area Citizens Ass'n v. Board of Cy. Comm'rs*, 241 Md. 187, 201, 216 A.2d 149, 158 (1966) (change in application to permit only 4¼ as many apartments as single-family homes rather than 4¾ times as many was a difference in legally insignificant degree, and did not justify a reapplication).

[3]The decision arguably could be reviewed as a factual one to be upheld if substantial evidence supported it, or as a mixed question of fact and law. If the

remand the case to the BOCC for resolution of this issue. We conclude that the record allows us to resolve the issue at this level. Even under the more deferential standard of review applicable to factual decisions, a decision not to apply the doctrine of res judicata could not be affirmed.

The principal basis upon which the first application was denied was lack of compatibility with uses permitted in the surrounding area. The minor changes between the two proposals do not significantly alter that conclusion. We do not decide whether the BOCC could have concluded differently when it reviewed the first application. It is clear, however, that the second application failed to present a substantial change in material and relevant circumstances so as to escape the issue preclusion bar of res judicata.

Since we find that the second application was barred by res judicata, we need not reach the issues of collateral estoppel and whether the BOCC's decision was arbitrary and capricious.

Reversed.

SCHOLFIELD and FORREST, JJ., concur.

Reconsideration denied January 11, 1994.

Review granted at 124 Wn.2d 1001 (1994).

---

latter, the relevant factual determination would be entitled to deference, but applying the doctrine of issue preclusion to those facts would be a legal question subject to de novo review. *Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993).