[No. 61443-1.    En Banc.    March 30, 1995.]

HILLTOP TERRACE HOMEOWNER'S ASSOCIATION, ET AL, *Respondents*, v. ISLAND COUNTY, ET AL, *Petitioners*.

24

*William H. Hawkins, Prosecuting Attorney,* and *David L. Jamieson, Jr., Deputy,* for petitioner Island County.

*Foster Pepper & Shefelman, Richard L. Settle, Michael K. Vaska,* and *John A. Fandel; Buck & Gordon, Amy L. Kosterlitz,* and *Peter L. Buck,* for petitioners Interstate Mobilephone Company, et al.

*Lewis H. Orland; Helsell, Fetterman, Martin, Todd & Hokanson,* by *Peter J. Eglick,* for respondents.

*Gordon Sivley* on behalf of Association of Washington Cities, Washington State Association of Counties, and Washington Association of Prosecuting Attorneys, amici curiae for petitioners.

*Stephen M. Rummage* on behalf of The Building Industry Association of Washington, amicus curiae for petitioners.

*William R. Andersen; Nancy Yamamoto* on behalf of the Washington Environmental Council, amicus curiae.

DURHAM, C.J. — Island County, its Board of County Commissioners (BOCC), Interstate Mobilephone Company (Interstate), and others seek reversal of a Court of Appeals decision which overturned the County's approval of a conditional use permit.[1] The permit concerned a site for a cellular phone and microwave relay tower on Whidbey Island. The BOCC denied the permit, and the denial became final when it was not timely appealed. Some 7 months later, the BOCC approved a similar application by Interstate for a conditional use permit for the same site.

---

[1]Petitioners will be referred to as "the County" or "Interstate". Respondents will be referred to as "Homeowners".

Homeowners appealed the approval to the Superior Court on a writ of certiorari. They argued the second application was markedly similar to the first, and that res judicata should bar approval of the second application. The Superior Court rejected that argument and entered a judgment upholding the grant of the permit. Homeowners appealed. The Court of Appeals reversed, holding that res judicata barred approval of the second application. We affirm in part and reverse in part. We agree the principles of res judicata apply to quasi-judicial land use decisions. However, we reverse the Court of Appeals' holding that the second application was not sufficiently different from the first, and we hold that substantial evidence supports the BOCC's factual determinations.

## FACTS

In 1989, Interstate applied to Island County for site plan approval to construct a microwave relay tower and mobile telephone cell site on Whidbey Island. The site was zoned "rural residential". Interstate proposed to construct a 150-foot steel lattice tower with a 336-square-foot equipment storage shelter, surrounded by a chain link fence. The application envisaged the 150-foot lattice tower supporting six antennae and four microwave dishes.

Under Island County ordinances, cellular phone companies are private utilities. The tower site was therefore a utility facility under the Island County Code (ICC). A utility facility is a form of institutional use under ICC 17.02.150-(e)(1)(m). Because the site was located in a rural residential zone, a conditional use permit was required. ICC 17.02.050-(b)(1)(c). Under the ICC, an institutional use can be conditionally allowed in a rural residential zone if it meets a "compatibility" standard:

> Conditional uses may be allowed upon site plan, use or temporary Use Approval but only when the applicant demonstrates that such use will be compatible with the character of permitted uses.

ICC 17.02.050(b). In addition, institutional uses are subject

to the county code's site plan criteria, which underscore the requirement of compatibility.

> Proposed structures shall be placed to provide a harmonious and compatible transition with the surrounding community, existing and proposed land uses, and general development pattern. . . . In no case may a Site Plan be granted approval if it is found to disrupt the character of surrounding permitted uses.

ICC 16.15.040(a)(3).

The Island County Planning Department issued a determination of nonsignificance pursuant to county ordinances and the State Environmental Policy Act of 1971. *See generally* RCW 43.21C. A hearing was then held before a hearing examiner. The hearing examiner recommended that the site plan review application be approved, "subject to conditions requiring increased setbacks, a new access road location, and wood fencing to buffer and improve compatibility of the proposal with the surrounding area . . .". Resp'ts' Clerk's Papers (RCP),[2] at 29-30.

Having received the recommendation of the hearing examiner, the application was next considered by the BOCC. At a public hearing on March 26, 1990, the BOCC rejected the recommendation of the hearing examiner by a 2-to-1 vote. The site plan application was rejected for two reasons. First, the BOCC concluded that the proposal "has the character of a light industrial use and is not compatible with the character of surrounding permitted uses of this particular community". RCP, at 33. Second, the BOCC concluded that various mitigation measures "are not sufficient to provide adequate transition for this light industrial type use to the surrounding present and future permitted uses". RCP, at 33.

After the public hearing and before the BOCC issued its written findings and conclusions, Interstate wrote to the BOCC requesting that it "reconsider its tentative decision". RCP, at 243. The BOCC chairperson responded that its decision was not "tentative" and hence that it was "not possible

---

[2]There are two different sets of clerk's papers, which will be designated PCP (petitioners' clerk's papers) and RCP (respondents' clerk's papers).

for the Board to entertain new information at this late date". RCP, at 37. The chairperson nevertheless went on to note that the Board's decision "should not be interpreted as a blanket denial to all antenna siting" but was instead "specific to the proposal at hand and as presented". RCP, at 37. The chairperson also noted:

> If you [Interstate] wish to reconsider your application, perhaps relocate it and/or provide for appropriate mitigation, you should not consider it a foregone conclusion that such an application would also be denied. It will be considered on its merits.

RCP, at 37.

After the BOCC issued its findings and conclusions, Interstate wrote the chairperson a second time requesting BOCC to modify its conclusions to make clear that BOCC considered the application inconsistent with surrounding uses solely with regard to the specific features of that application. The letter noted that Interstate's counsel had advised them that the wording of BOCC's findings and conclusions could be construed to preclude consideration of a revised application under collateral estoppel. At the same time, however, Interstate acknowledged in the letter that it had a limited amount of time to seek judicial review and requested expedited action. BOCC did not modify its conclusions as requested.

Interstate failed to file an appeal within the 30-day appeal period. Instead, on June 6, 1990, 58 days after the BOCC's written decision, Interstate filed a new site plan application for the same property. This time Interstate proposed a 150-foot tower consisting of a single pole rather than a steel lattice structure. The facility, as in the first application, included a 336-square-foot equipment shed, a generator and a pad. However, the proposal moved the site of the tower and shed more to the center of the parcel and relocated the access road.

The hearing examiner conducted a hearing on the second application, which a member of the county planning department described as "a re-application of a previous site plan".

PCP, at 118. The examiner issued a recommendation on September 26, 1990, in which he noted some differences between the applications. He noted that, "While the differences are not significant, the telephone poles [*sic*] should have less visual impact." RCP, at 43. The examiner also remarked that the new proposal relocated the access road and adjusted the siting within the parcel, which would "provide better buffering from adjoining properties". RCP, at 43. He concluded, "*Other than these changes*, the proposal is virtually identical" to the first proposal. (Italics ours.) RCP, at 43.

The examiner again recommended approval of the site plan, concluding that visual impacts had been reduced and that "[t]he proposal is compatible with the character of present and future rural residential uses in the area." RCP, at 47. He then explicitly noted:

> Some changes have been made in the proposal which further minimize what would already seem to be minor impacts on the surrounding area. A question which the Hearing Examiner will leave to the Board is whether or not the changes . . . are significant enough to allow the Board to reconsider its decision only a few months after denying a very similar proposal.

RCP, at 47.

The second application came before the BOCC in November 1990. The chairperson read into the record part of an opinion from the Island County Prosecuting Attorney which concluded that while under some circumstances the BOCC could deny an application based on res judicata and collateral estoppel, it could not do so in the present case. The chairperson concluded that the BOCC "must hear [the application] and . . . must make the decision to approve, reject, or remand the Hearing Examiner's findings". PCP, at 129.

In contrast to the first application, the BOCC accepted the hearing examiner's recommendation and approved the second application. The vote was again 2 to 1, with the chairperson changing his vote from the first application. In explanation, he commented that Interstate "has made a real

effort to mitigate from where they stood last time, and I feel compelled to agree this time with the Hearing Examiner." PCP, at 143.

Homeowners filed a writ of review of the BOCC decision in Island County Superior Court. The court upheld the decision, and Homeowners appealed. The Court of Appeals held that approval of the second permit application was barred by res judicata. In its decision, the court also formulated a standard for determining identity of subject matter for purposes of res judicata: "We conclude that final quasi-judicial land use decisions should be subject to reexamination when a party is able to show a substantial change in material, relevant circumstances." *Hilltop Terrace Homeowner's Ass'n v. Island Cy.*, 72 Wn. App. 91, 97, 863 P.2d 604 (1993). We accepted review.

### STANDARD OF REVIEW

When review of a quasi-judicial administrative land use action is invoked by statutory writ of certiorari, the appellate court looks to the standards of review implicit in the certiorari statute, RCW 7.16.120. *See Parkridge v. Seattle*, 89 Wn.2d 454, 459, 573 P.2d 359 (1978); *Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 263, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992). On issues of law, we determine de novo whether the decision below was contrary to law. RCW 7.16.120(3). On issues of fact, we review "[w]hether the factual determinations were supported by substantial evidence". RCW 7.16.120(5).[3] Ordinarily, an appellate court reviews the administrative decision on the record of the administrative tribunal, not of the superior court operating in

---

[3]The current version of RCW 7.16.120(5) was added in 1989. Laws of 1989, ch. 7, § 1. Prior to that amendment, subsection (5) included language which courts had interpreted as embodying the "arbitrary and capricious" standard of review. Former RCW 7.16.120; *see, e.g., Murphy v. Seattle*, 32 Wn. App. 386, 647 P.2d 540 (1982). Though the parties do not argue the point, the 1989 amendment evidently replaced the previous "arbitrary and capricious" standard with a "substantial evidence" standard. *See Freeburg v. Seattle*, 71 Wn. App. 367, 371 n.7, 859 P.2d 610 (1993).

its appellate capacity. *Sherman v. Moloney*, 106 Wn.2d 873, 881, 725 P.2d 966 (1986); *Leavitt v. Jefferson Cy.*, 74 Wn. App. 668, 677, 875 P.2d 681 (1994); *but see Responsible Urban Growth Group v. Kent*, 123 Wn.2d 376, 384, 868 P.2d 861 (1994) (trial court may consider evidence outside the record on writ of review if petition alleges procedural irregularities, appearance of fairness violation, or constitutional question). Finally, absent an assignment of error to a finding of fact of an administrative agency, that finding is a verity on appeal. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 842 P.2d 938 (1992).

### Res Judicata In Quasi-judicial Proceedings

This dispute centers on three questions. First, is the doctrine of res judicata relevant to the context of quasi-judicial land use decisions? Second, if so, did the Court of Appeals adopt and correctly apply the appropriate standard for determining whether successive applications for a conditional use permit involved "the same subject matter"? Third, are the BOCC's factual determinations regarding the second application supported by substantial evidence?

### I

" 'Res judicata' refers to the various ways in which a judgment in one action will have a binding effect in another." Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* § 11.3, at 590 (3d ed. 1985). As another commentator puts it, "The law of res judicata . . . consists entirely of an elaboration of the obvious principle that a controversy should be resolved once, not more than once." 4 Kenneth C. Davis, *Administrative Law Treatise* § 21:9, at 78 (2d ed. 1983). The various policies animating the doctrine have been aptly summarized and provide a helpful context:

> The most purely public purpose served by res judicata lies in preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results. . . .
>
> A second largely public purpose has been found in preserving courts against the burdens of repetitious litigation. . . .

The judicial interest in avoiding the public burdens of repetitious litigation is allied with the interest of former litigants in avoiding the parallel private burdens. For the most part, attention is focused on the need to protect a victorious party against oppression by a wealthy . . . adversary. . . .

The deepest interests underlying the conclusive effect of prior adjudication draw from the purpose to provide a means of finally ending private disputes. The central role of adversary litigation in our society is to provide binding answers. We want to free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs. Repose is the most important product of res judicata.

(Footnotes omitted.) 18 Charles A. Wright et al., *Federal Practice* § 4403, at 12-15 (1981). These policies are equally applicable in a quasi-judicial administrative context. *See Lejeune v. Clallam Cy., supra*; Restatement (Second) of Judgments § 83(1) (1982) (valid and final adjudicative determination by administrative tribunal has same effects under rules of res judicata as judgment of court). From these principles we conclude that res judicata is applicable to the present administrative context, and stands for the general proposition that there must be some limit to repeated submissions of applications involving the same subject matter. The next question becomes how this limit is to be formulated.

## II

Resurrecting the same claim in a subsequent action is barred by res judicata. *See* Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 812 (1985). When a subsequent action is on a different claim, yet depends on issues which were determined in a prior action, the relitigation of those issues is barred by collateral estoppel.[4] *See generally* Trautman, 60 Wash. L. Rev. 805.

---

[4]Res judicata is also known as claim preclusion and collateral estoppel is also known as issue preclusion. Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805 (1985.) The distinction between claim and issue preclusion is not absolute. Rather, "[t]he distinction between an issue and a claim is often one of degree and emphasis in applying a deeper principle that an original misadventure cannot be retrieved for a second chance." 18 Charles A. Wright et al., *Federal Practice* § 4402, at 1 (Supp. 1994).

■ By its nature, res judicata applies to what has been decided. Davis § 21:5, at 65 (tribunal's determination can be res judicata only of a claim or issue the tribunal has decided). *But see* Trautman, 60 Wash. L. Rev. at 813-14 (contending claim preclusion, unlike issue preclusion, applies to claims that should have been raised, as well as to those actually litigated). In Washington, whether a claim already has been decided is determined by a 4-part test:

> Res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.

*Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983). In the present context, whether res judicata bars approval of the second application hinges on whether there is an identity of subject matter between the first and second applications for the conditional use permit. As the Court of Appeals recognized, "The proper formulation of the test for determining identity of subject matter in this context appears to be an issue of first impression in our jurisdiction." *Hilltop Terrace*, 72 Wn. App. at 96.

■ In formulating the proper test, we begin with the elementary proposition that subject matters are not identical if they differ substantially. *See* Davis § 21:5, at 59. As the Court of Appeals noted, other states have refined this general principle:

> A review of out-of-state cases shows that the majority view is that a second application for a similar proposal can be considered if there is a "substantial change in circumstances" or a "material change" in the application or in conditions relevant to the application.

(Footnote omitted.) *Hilltop Terrace*, 72 Wn. App. at 96-97. *See also* 4 Arden H. Rathkopf and Daren A. Rathkopf, *Zoning and Planning* § 48.02[1]-[2] (4th ed. 1994). We adopt this majority view as the Washington rule governing successive applications of similar proposals with one refinement:

the change in the application must be a substantial change. Thus, we hold that a second application may be considered if there is a substantial change in circumstances or conditions relevant to the application or a substantial change in the application itself.

The County and Interstate raise a number of policy arguments which assert that this rule will significantly reduce desirable flexibility in land use decisions. However, such arguments overlook the fact that res judicata is a common law doctrine. 18 Wright et al. § 4403 (Supp. 1994). The use of res judicata principles in administrative actions therefore yields to applicable statutes or ordinances. *See* Restatement (Second) of Judgments § 83 cmt. a (1982) (application of res judicata principles to administrative context subject to statutory provisions that may, expressly or by implication, govern the res judicata effect of the determinations of a particular tribunal). Even in the wake of our adoption of the majority rule, local legislative bodies are free to calibrate the flexibility of their land use decisionmaking by expressly specifying the res judicata effect of particular proceedings.[5]

For the same reason, the County's constitutional argument that the Court of Appeals' decision creates a separation of powers problem is without merit. Local jurisdictions are free to decide under what conditions subsequent land use applications for the same property may be considered. For example, Island County has an ordinance which governs the conditions under which a rezone application may be resubmitted. ICC 17.02.210(e). The majority view which we adopt simply specifies the common law rule that applies in the absence of such ordinances.

We next apply the majority rule to the facts of the present dispute. The second application for the conditional use

---

[5]For example, Seattle has an ordinance which prohibits reapplication after a denial for 12 months, and then allows reapplication "only if the applicant establishes that there has been *a substantial change of circumstances pertaining to a material issue.*" (Italics ours.) Seattle Municipal Code 23.76.056(E).

permit substituted a fundamentally different kind of structure, completely rerouted the access road to the site, significantly increased setbacks, and changed the number and kind of antennae.[6] We hold these changes in both design and function in the second application together constitute "a substantial change in the application". The BOCC's approval of the second application is, therefore, not barred by res judicata.

## III

We turn finally to the resolution of any remaining factual issues. Since we have concluded that res judicata does not bar approval of the second application, the only remaining questions pertain to the second application's compatibility with surrounding uses. *See* ICC 16.15.040(a)(3); ICC 17.02.050(b). Whether the changes in the second application rendered the proposed use compatible with the surrounding area is a factual judgment that properly belongs to the BOCC. Nevertheless, we must be satisfied that substantial evidence supports the BOCC's factual determinations pertaining to the second application. RCW 7.16.120(5). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." (Citations omitted.) *State v. Maxfield*, 125 Wn.2d 378, 385, 886 P.2d 123 (1994). Under this standard, an appellate court is not to substitute its own judgment for that of the factfinder. Instead, review under this standard "necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences." (Citations omitted.) *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992).

---

[6]The record is somewhat unclear as to whether the ultimate height of the proposed tower was changed.

While the first application was rejected because of its incompatibility with surrounding uses, the BOCC adopted the recommendation of the hearing examiner and approved the second application by a 2-to-1 majority. We note the hearing examiner found that changes in the second proposal enhanced the compatibility of the proposal with the surrounding area. For example, moving the tower site allowed it to be "located within existing mature trees which will provide significant natural screening . . . and minimize visual impacts". RCP, at 43. Only the top of the tower, and not the site itself, would be visible from off site. In addition, the examiner found that substitution of the single pole for the lattice tower would "reduce visual impacts". RCP, at 43. The examiner concluded, "Considering all of the circumstances, the tower is relatively non-obtrusive and the visual impacts do not appear to be significant enough to support a denial of the request." RCP, at 44. Given these findings and the changes in both design and function between the first and second application, we conclude the BOCC's factual determinations regarding the second application are supported by substantial evidence.

CONCLUSION

The general policies underlying res judicata apply with equal force in the particular context of quasi-judicial land use determinations. The public interest in binding answers, the judicial interest in avoiding repetitious litigation and inconsistent results, and the social interest in protecting a victorious party against an adversary who can afford repeatedly to resurrect a dispute all suggest that res judicata is relevant to quasi-judicial determinations. The majority rule we adopt appropriately adapts these general principles to quasi-judicial land use decisions. If local legislative bodies desire greater or lesser flexibility than the rule embodies, they are free to expressly specify the res judicata effect of

particular proceedings.We affirm the Superior Court's decision that the two applications were not identical in subject matter.

UTTER, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN AND BRACHTENVACH, JJ. Pro Tem., concur.