[No. 80810-4.   En Banc.]

Argued September 22, 2009.      Decided December 17, 2009.

GOLD STAR RESORTS, INC., *Petitioner*, v. FUTUREWISE ET AL., *Respondents*.

*John C. Belcher* (of *Belcher Swanson Law Firm, PLLC*), for petitioner.

*Kenneth Lederman* (of *Riddell Williams, PS*); *Tim Trohimovich* (of *Futurewise*); and *Keith P. Scully* (of *Gendler & Mann, LLP*), for respondents.

*David S. McEachran, Prosecuting Attorney*, and *Karen Frakes, Deputy*, for Whatcom County.

*Robert M. McKenna, Attorney General,* and *Jerald R. Anderson, Senior Counsel,* for the Western Washington Growth Management Hearings Board.

*Brian T. Hodges* on behalf of Pacific Legal Foundation, amicus curiae.

¶1 MADSEN, J. — This case involves challenges to Whatcom County's (the County) comprehensive plan on the ground that it does not comply with the Growth Management Act's (GMA), chapter 36.70A RCW, provisions regarding limited areas of more intensive rural development and rural densities. We agree with the Court of Appeals that, as the Western Washington Growth Management Hearings Board (Board) concluded, the County must revise its comprehensive plan to conform to 1997 amendments to the GMA that set out criteria for establishing limited areas of more intensive rural development and rural densities. We disagree with the Court of Appeals, however, on a second issue, whether the Board improperly relied on a fixed standard regarding rural densities. Applying our recent precedent, we hold that the Board erroneously relied on a "bright line" rural density rule of no more than one residence per five acres. We affirm in part, reverse in part, and remand this matter to the Board.

## FACTS

¶2 In 1997, the County adopted a comprehensive plan and related development regulations as required by the GMA. The GMA originally provided as to the rural element of a comprehensive plan: "The rural element shall permit land uses that are compatible with the rural character of such lands and provide for a variety of rural densities." LAWS OF 1990, 1st Ex. Sess., ch. 17, § 7(5). In its implemen-

tation of this part of the GMA, the County's plan designated and mapped areas of development in the rural areas: small towns and crossroads communities, crossroads commercial, resort and recreational subdivisions, suburban enclaves, and transportation corridors.

¶3 Two months after the County adopted its comprehensive plan, the GMA was amended to allow limited areas of more intensive rural development (LAMIRDs) to be included in the rural element of a comprehensive plan. Laws of 1997, ch. 429, §§ 3, 7; RCW 36.70A.070(5)(d). Areas allowed "consist[ ] of the infill, development, or redevelopment of existing commercial, industrial, residential, or mixed-use areas, whether characterized as shoreline development, villages, hamlets, rural activity centers, or crossroads developments." RCW 36.70A.070(5)(d)(i). Counties must "adopt measures to minimize and contain the existing areas or uses of more intensive rural development" so that "[l]ands included in such existing areas or uses shall not extend beyond the logical outer boundary of the existing area or use, thereby allowing a new pattern of low-density sprawl." Laws of 1997, ch. 429, § 7(d)(iv); RCW 36.70A-.070(5)(d)(iv). For Whatcom County, "an existing area or existing use is one that was in existence . . . [o]n July 1, 1990." RCW 36.70A.070(5)(d)(v)(A).

¶4 A county must address several circumstances when establishing the "logical outer boundary" of a LAMIRD:

(A) the need to preserve the character of existing natural neighborhoods and communities, (B) physical boundaries such as bodies of water, streets and highways, and land forms and contours, (C) the prevention of abnormally irregular boundaries, and (D) the ability to provide public facilities and public services in a manner that does not permit low-density sprawl.

RCW 36.70A.070(5)(d)(iv).

¶5 LAMIRDs are not intended for continued use as a planning device, rather, they are "intended to be a one-time recognition of existing areas and uses and are not intended to be used continuously to meet needs (real or perceived) for

additional commercial and industrial lands." *People for a Liveable Cmty. v. Jefferson County*, No. 03-2-0009c, 2003 GMHB LEXIS 34, at \*2 (W. Wash. Growth Mgmt. Hr'gs Bd. Final Dec. and Order Aug. 22, 2003). In general, planning in rural zones must "protect the rural character of the area" and "contain[ ] or otherwise control[ ] rural development." RCW 36.70A.070(5)(c)(i).

¶6 The GMA requires cities and counties to review their comprehensive plans and development regulations every seven years. RCW 36.70A.130(1)(a), (4). Thus, the County was required to review and revise its comprehensive plan by December 1, 2004. The County completed its review in early 2005 and updated certain portions of the comprehensive plan. At a public hearing held on January 25, 2005, Futurewise,[1] an advocacy group for responsible growth management, challenged portions of the updated comprehensive plan and development regulations, contending that they did not comply with the GMA. In particular, Futurewise argued that the County's areas of development in the rural areas were improperly designated and larger than permissible under the new LAMIRD provisions of the GMA and that rural densities were too great. These challenges were rejected.

¶7 On January 28, 2005, the County enacted Resolution 2005-006, which stated that the County had completed the seven-year review and revised the comprehensive plan and related development regulations. The resolution incorporated a number of ordinances implementing the changes the County made. However, with regard to the LAMIRD amendments to the GMA, the County concluded that no revisions to its comprehensive plan or development regulations were required and accordingly none were made.

¶8 Thus, while the County's comprehensive plan had included policies and "descriptors" for designating areas of

---

[1] Futurewise was formerly known as 1000 Friends of Washington.

more intense development in its rural areas,[2] these preexisted the LAMIRD amendments to the GMA and were unchanged following the County's seven-year review and revisions to the plan.

¶9 On March 25, 2005, Futurewise appealed the County's adoption of Resolution 2005-006 to the Board. It argued that the County failed to update its comprehensive plan to bring it into conformity with the GMA's LAMIRD amendments in three ways: (1) the County adopted comprehensive plan policies that allow and encourage expansion of areas of more intensive growth in rural areas, (2) the plan contains descriptors for areas of more intensive rural development that do not comply with the GMA, and (3) the County established zoning designations shown on Map 8 (comprehensive plan designation map) that improperly apply beyond the logical boundaries of valid LAMIRDs.

¶10 The County moved to dismiss on the ground that the new criteria added in the 1997 amendments did not apply to an existing comprehensive plan. However, the Board adhered to an earlier board decision that the LAMIRD is an optional planning tool that, if used, must comply with the GMA as amended.

¶11 Petitioner Gold Star Resorts, Inc., owns 76 acres of land in Whatcom County adjacent to Interstate 5. The property lies within an area designated as a "transportation corridor" under the County's comprehensive plan. On July 21, 2005, Gold Star successfully moved to intervene in the proceedings before the Board, contending that Futurewise's appeal threatened its private property. Gold Star adopted the County's briefing and arguments.

¶12 On September 20, 2005, the Board issued its final decision and order, holding that the County failed to review and revise its comprehensive plan in compliance with RCW 36.70A.130's mandates for a seven-year review. Clerk's

---

[2] The comprehensive plan designation descriptors address each type of rural area of more intensive development and provide the general criteria for establishing them.

Papers (CP) at 1546-82 (*Futurewise v. Whatcom County*, No. 05-2-0013, 2005 GMHB LEXIS 121 (W. Wash. Growth Mgmt. Hr'gs Bd. Final Dec. and Order Sept. 20, 2005) (Final Decision)). The Board found that one of the challenged plan policies regarding rural areas of more intensive development failed to comply with the GMA. This policy, Policy 2GG-2, states, " 'Designate approximate town boundaries based on the areas characterized by existing development and logical extensions of the present service areas.' CP [(comprehensive plan) at] 2-73." CP at 1555 (Final Decision at 10, 2005 GMHB LEXIS 121, at *16). The Board determined that Policy 2GG-1 allowed more intensive areas of rural development than permitted under the GMA LAMIRD amendments because it allowed " 'approximate' boundaries, drawn based on 'existing development' which is not restricted to the built environment as of July 1990." *Id.* Moreover, the policy allowed "a proto-LAMIRD to be based on logical extensions of present service areas,"[3] contrary to the 1997 amendments' directive to limit and contain more intensive rural development and RCW 36.70A.070(5)(d)(iv)'s requirement that " '[l]ands included . . . not extend beyond the logical outer boundary of the existing area or use.' " CP at 1555-56 (Final Decision at 10-11, 2005 GMHB LEXIS 121, at *16-17) (emphasis omitted). The Board found that the other five challenged policies were compliant.

¶13 The Board also held both that the County failed to update and revise the comprehensive plan to include the amended GMA's strict criteria applying to LAMIRDs and that the preexisting designation descriptors in the plan do not, themselves, conform to the statutory criteria. The Board pointed out that while it is not necessary for plan provisions that establish LAMIRDs to use the exact same words as RCW 36.70A.070(5)(d), plan provisions for estab-

---

[3] The Board used the term "proto-LAMIRDs" to refer to the rural areas described in the County's plan that are now subject to the LAMIRD designations in the GMA. As explained, these areas were designated under plan provisions adopted prior to the LAMIRD amendments to the GMA.

lishing LAMIRDs must utilize the same criteria that are set out in the LAMIRD amendments. CP at 1559 (Final Decision at 14, 2005 GMHB LEXIS 121, at *23).

¶14  The Board then examined each relevant category in the County's comprehensive plan to see if it complied with the 1997 LAMIRD amendments and explained in detail how the descriptors fail to conform to the statutory criteria. For example, with regard to transportation corridors, the Board explained:

> The transportation corridor descriptor provides that it is "designed to alert the community to proposed transportation corridor related expansion and to guide developments accordingly." CP [(comprehensive plan) at] 2-91. The locational criteria [in the plan] provide that the transportation corridors shall be in areas "characterized by existing transportation-related development" but . . . fails to limit such development to areas where there was a built environment in July 1990 and to create logical outer boundaries to contain and minimize development within the designated areas. RCW 36.70A.070(5)(d)(iv). The transportation corridor designation, notably the Guide Meridian, is designed to be expanded and thus encourages, rather than prevents, low-density sprawl, as required by RCW 36.70A.070(5)(d)(iv). CP [(comprehensive plan) at] 2-91. For these reasons, the transportation corridor descriptor . . . fails to comply with RCW 36.70A.070(5)(d).

CP at 1561-62 (Final Decision at 16-17, 2005 GMHB LEXIS 121, at *27-28). The Board engaged in a similar detailed discussion of the remaining descriptors. In brief, two of these remaining descriptors expressly anticipate future development, two do not exclude development after 1990, and one does not refer to existing development at all. CP at 1559-62 (Final Decision at 14-17, 2005 GMHB LEXIS 121, at *23-28).

¶15  The Board determined, however, that until the County adopts compliant criteria for designating LAMIRDs and applies these criteria to draw the logical outer boundaries of the RCW 36.70A.070(5)(d)(i)-type LAMIRDs, it cannot map compliant LAMIRDs. The Board was therefore

unable to determine the extent to which existing LAMIRDs were properly shown on Map 8. CP at 1562 (Final Decision at 17, 2005 GMHB LEXIS 121, at *29).

¶16 Finally, the Board also concluded that RCW 36-.70A.070(5)(d)(iv) imposes the duty on the County to undertake a specific analysis when designating LAMIRDS; this requires consideration of certain statutory factors and concerns, and the record must show that the County addressed these statutory considerations and must show the basis for the County's decisions. CP at 1563 (Final Decision at 18, 2005 GMHB LEXIS 121, at *29-30). The Board concluded that it "cannot review the compliance of particular LAMIRD boundaries with the GMA until the County has made the determinations that go into a decision of where to draw the logical outer boundaries." *Id.* The Board therefore remanded the matter to the County to achieve compliance with the GMA.

¶17 In addition to its challenges based on the LAMIRD amendments, Futurewise also challenged the County's failure to review and revise its rural density designations. The Board concluded that unless the LAMIRD criteria are met, more intensive rural development is not allowed and that, except for LAMIRDs, in rural areas "[r]esidential densities of greater than one dwelling unit per five acres are not considered rural densities." CP at 1566 (Final Decision at 21, 2005 GMHB LEXIS 121, at *35).

¶18 Gold Star, but not the County, petitioned for review by Whatcom County Superior Court. The superior court held that the Board incorrectly required the County to revise its LAMIRDs[4] and rural densities. The court concluded that the GMA does not require that comprehensive plans be amended to comply with current GMA requirements; rather, RCW 36.70A.130(1) "requires that counties review and evaluate their comprehensive plans and development regulations 'identifying the revisions made, or

---

[4] Although the superior court called the County's existing areas of more intense rural development "LAMIRDs," as explained, the County's areas of more intense rural development preceded the LAMIRD amendments to the GMA.

that a revision was not needed and the reasons therefore.'" CP at 115. The court additionally ruled that "[t]he LAMIRDs were the subject of prior litigation and were affirmed by" both the superior court and the Court of Appeals in 1998. *Id.*; *see Wells v. W. Wash. Growth Mgmt. Hearings Bd.*, 100 Wn. App. 657, 997 P.2d 405 (2000). Finally, the court held that the Board also improperly used a bright line rule of one residence per five acres when deciding the rural density challenge.

¶19 Futurewise appealed, and the Court of Appeals reversed. The Court of Appeals first rejected Gold Star's claim that res judicata or collateral estoppel principles barred Futurewise's challenge to the County's plan provisions regarding more intense development in the rural areas. The Court of Appeals then held that the GMA's review statute requires a county "to amend its comprehensive plan as necessary to comply with GMA amendments that came after adoption of the plan." *Gold Star Resorts, Inc. v. Futurewise*, 140 Wn. App. 378, 391, 166 P.3d 748 (2007). The court affirmed the Board's holdings that the County had not applied proper criteria in establishing its areas of more intense rural development and that the County's comprehensive plan was not compliant with the GMA's LAMIRD provisions. The Court of Appeals also reversed the superior court's ruling on the "bright line rule" of rural density. *Id.* at 396-98.

¶20 Gold Star sought discretionary review by this court. We deferred consideration of the petition pending the decision in *Thurston County v. Western Washington Growth Management Hearings Board*, 164 Wn.2d 329, 190 P.3d 38 (2008). After *Thurston County* was filed, we granted the petition for review.

## ANALYSIS

■■ ¶21 Our decision in *Thurston County* resolves two of the issues raised by the parties. First, we held that "a party may challenge a county's failure to revise a compre-

hensive plan only with respect to those provisions that are directly affected by new or recently amended GMA provisions." *Id.* at 344. This means "those provisions related to mandatory elements of a comprehensive plan that have been adopted or substantively amended since the previous comprehensive plan was adopted or updated, following a seven year update." *Id.* This holding confirms the Court of Appeals' holding in this case that Futurewise could challenge the portions of the County's comprehensive plan affected by the GMA amendments pertaining to LAMIRDs but, contrary to Futurewise's argument, could not challenge any and all aspects of the plan alleged to be noncompliant with the GMA.

¶22 The second holding in *Thurston County* that applies here is that when differentiating between urban and rural densities, the Board cannot employ bright line rules. *Id.* at 357-60. Thus, the Board improperly relied in this case on a "one residence per five acre" rule. It makes no difference whether a county concedes this "rule" is correct, as occurred here and in *Thurston County*, because a concession of law is not binding. *Id.* at 358 n.19.

¶23 Futurewise maintains, however, that the Board did not apply a bright line rule despite its reference to the one residence per five acre standard. Futurewise also argues that it presented substantial evidence that densities in six rural zones established by the County's 2005 comprehensive plan violate the goals and requirements of the GMA and therefore the Board correctly determined that the challenged portions of the 2005 plan impermissibly fostered and encouraged an increase in density throughout rural areas in the county.

¶24 The Board's final decision and order shows that its decision on the rural density issue was based on its determination that "[r]esidential densities of greater than one dwelling unit per five acres are not considered rural densities," and "[d]ensities that are not urban but are greater than one dwelling unit per five acres generally promote sprawl in violation of goal 2 of the GMA," with the only

exception being in LAMIRDs. CP at 1566, 1567 (Final Decision at 21, 22, 2005 GMHB LEXIS 121, at *35-36). Contrary to Futurewise's claims, the Board did apply a bright line rule and *Thurston County* controls on this issue.

¶25 As in *Thurston County*, this matter must be remanded to the Board to determine, without regard to the bright line rule of one residence per five acres, whether it was clearly erroneous for the County to include the challenged densities in its 2005 comprehensive plan. *See Thurston County*, 164 Wn.2d at 360.

¶26 The next question is whether, as Gold Star argues, Futurewise's challenge based on the LAMIRD amendments to the GMA is barred by res judicata or collateral estoppel. To address this contention, it is necessary to understand the nature of Futurewise's challenge and the Board's decision.

■■ ¶27 A comprehensive plan is presumed valid. "The board shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of" the GMA. RCW 36-.70A.320(3). An action is "clearly erroneous" if the Board has a " ' "firm and definite conviction that a mistake has been committed." ' " *Thurston County*, 164 Wn.2d at 340-41 (quoting *Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 497, 139 P.3d 1096 (2006) (quoting *Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993))).

¶28 Under this standard, Futurewise argued, and the Board correctly found, that the County's preexisting "descriptors" do not reflect current law on LAMIRDs and that upon conducting its seven-year review the County was required to bring its plan into conformance with the LAMIRD amendments to the GMA. RCW 36.70A.070(5)(d) provides, in relevant part:

(iv) A county shall adopt measures to minimize and contain the existing areas or uses of more intensive rural development, as appropriate, authorized under this subsection. Lands in-

cluded in such existing areas or uses shall not extend beyond the logical outer boundary of the existing area or use, thereby allowing a new pattern of low-density sprawl. Existing areas are those that are clearly identifiable and contained and where there is a logical boundary delineated predominately by the built environment, but that may also include undeveloped lands if limited as provided in this subsection. The county shall establish the logical outer boundary of an area of more intensive rural development. In establishing the logical outer boundary the county shall address (A) the need to preserve the character of existing natural neighborhoods and communities, (B) physical boundaries such as bodies of water, streets and highways, and land forms and contours, (C) the prevention of abnormally irregular boundaries, and (D) the ability to provide public facilities and public services in a manner that does not permit low-density sprawl;

(v) For purposes of (d) of this subsection, an existing area or existing use is one that was in existence:

(A) On July 1, 1990, in a county that was initially required to plan under all of the provisions of this chapter.

¶29 On their face, the County's existing descriptors do not include or reflect these mandatory criteria. Moreover, the County conceded that it did not consider the statutory LAMIRD criteria when defining its designations for more intensely developed rural areas and did not attempt to analyze the logical outer boundaries of the areas under RCW 36.70A.070(5)(d). The County also expressly acknowledged that some of the areas it designated include "vast amounts of undeveloped land" and that the County planned to review the boundaries of several of the areas later that year for compliance with the statutory LAMIRD requirements. CP at 1628. Other areas, the County contended, do conform to the LAMIRD criteria set forth in the statute.

¶30 The record therefore supports the Board's conclusion that the County did not comply with the review requirements of RCW 36.70A.130 when it failed to conform its 2005 comprehensive plan to the LAMIRD statute and

also supports the Board's decision to remand this case for the County to adopt compliant criteria.[5]

¶31 Gold Star emphasizes, however, that although the LAMIRD statute was not effective when the County's original comprehensive plan was adopted, the County anticipated the legislation, pointing to a comment in the Court of Appeals' opinion to the effect that the County was aware of the pending legislation at the time it adopted the plan. *Gold Star*, 140 Wn. App. at 392. Regardless, the County did not incorporate the relevant LAMIRD criteria into its comprehensive plan following the statutorily required review. Nor, by its own admission, did the County use them to delineate areas of more intensive rural development.

¶32 It is in this context that Gold Star contends that *Wells* precludes Futurewise's challenges under the doctrines of collateral estoppel and res judicata, arguing in particular that *Wells* upheld Whatcom County's transportation corridors.

> "Resurrecting the same claim in a subsequent action is barred by res judicata." Under the doctrine of res judicata, or claim preclusion, "a prior judgment will bar litigation of a subsequent claim if the prior judgment has 'a concurrence of identity with [the] subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.'"

> "When a subsequent action is on a different claim, yet depends on issues which were determined in a prior action, the relitigation of those issues is barred by collateral estoppel." Collateral estoppel, or issue preclusion, requires

> "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication;

---

[5] The Board's decision leaves room for determinations that ultimately some of the more intensive rural development areas designated in the comprehensive plan, as originally adopted, conform to the statutory criteria—but the Board appropriately declined to assess whether areas of more intensive rural development designated in the plan comport with the statute, given that the County had not yet adopted (or applied) the statutory criteria as required.

and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

"In addition, the issue to be precluded must have been actually litigated and necessarily determined in the prior action."

*City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 791-92, 193 P.3d 1077 (2008) (alteration in original) (citations omitted) (quoting *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 31, 891 P.2d 29 (1995); *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500-01, 130 P.3d 809 (2006) (quoting *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995)); *Hilltop Terrace Homeowner's Ass'n*, 126 Wn.2d at 31; *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507-08, 745 P.2d 858 (1987) (quoting *Malland v. Dep't of Ret. Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985)).

¶33 The subject matter and issues in the present case concern the County's requirement to review and revise its comprehensive plan as required under RCW 36.70A.130. More specifically, the case concerns whether the Board's conclusion that the County improperly failed to revise its plan to comply with the LAMIRD criteria in RCW 36-.70A.070(5)(d)(v) was clearly erroneous.

¶34 Because *Wells* preceded the County's seven-year review, it did not (and could not) involve the same subject matter and issues as the present case. Whether areas such as transportation corridors were addressed by the case (and there is disagreement about this because the superior court's and the Court of Appeals' decisions were procedural in nature), they were assuredly not addressed under the LAMIRD amendments. Accordingly, neither collateral estoppel nor res judicata principles apply to bar Futurewise's challenge to the County's failure to review and revise its plan to include the LAMIRD criteria.

¶35 We conclude that Futurewise's challenge based on the 1997 LAMIRD amendments is not barred by collateral estoppel or res judicata principles.

¶36 Finally, Futurewise complains that the Court of Appeals erroneously said that vested development rights must be considered when establishing LAMIRDs. This complaint arose because the Court of Appeals said that development existing as of 1990 includes vested development rights. *Gold Star*, 140 Wn. App. at 394 & n.41. The record does not disclose any vested rights at issue and the Court of Appeals' comment is dictum, which we specifically disavow. We also note that the Court of Appeals cited *Quadrant Corporation v. Central Puget Sound Growth Management Hearings Board*, 154 Wn.2d 224, 110 P.3d 1132 (2005), in support of its dictum, but the context in *Quadrant* was quite different from that here.

## CONCLUSION

¶37 We affirm the Court of Appeals' determination that collateral estoppel and res judicata principles do not bar Futurewise's challenge to the County's failure, during the seven-year review required by the GMA, to review and revise the comprehensive plan to include criteria for LAMIRDs that reflect the 1997 amendments to the GMA. Under *Thurston County*, Futurewise was entitled to bring this challenge, but not to bring challenges to portions of the comprehensive plan not directly affected by new or recently amended GMA provisions.

¶38 We also affirm the Court of Appeals' decision upholding the Board's holdings that the County's comprehensive plan does not comply with the GMA's LAMIRD provisions and that the County was required, but failed, to revise the plan to include the LAMIRD criteria and then apply them in establishing areas of more intense rural development.

¶39 Finally, we reverse the Court of Appeals' holding that the Board did not improperly apply a bright line rule in addressing Futurewise's challenge to the rural density designations; the Board did in fact rely on a bright line rule of one residence per five acres in rural areas (other than LAMIRDs).

¶40 Accordingly, this matter is remanded to the Board for reconsideration of Futurewise's challenges to the rural density designations without applying a bright line rule. In addition, the County must revise its comprehensive plan to conform to the LAMIRD provisions of the GMA and then apply the statutory criteria to establish appropriate areas of more intensive rural development. As noted, it is possible that some of the County's existing areas of more intense development will be found to conform to the statutory criteria. But these criteria must be incorporated into the comprehensive plan and then applied before any such determinations can be made. As we have noted in this opinion, the County has evidently already begun the process of reassessing its areas of more intense rural development.

¶41 The Court of Appeals is affirmed in part and reversed in part, and this matter is remanded to the Western Washington Growth Management Hearings Board.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.