62 P.3d 912 (2003)
115 Wash.App. 417
WILLAPA GRAYS HARBOR OYSTER GROWERS ASSOCIATION, a Washington non-profit corporation, Respondent/Cross-Appellant,
v.
MOBY DICK CORPORATION, a Washington corporation, Appellant/Cross-Respondent and
Pacific County, Respondent.
Willapa Grays Harbor Oyster Growers Association, a Washington non-profit corporation, Petitioner,
v.
Shorelines Hearings Board, a State agency; Respondent,
Pacific County and the Moby Dick Corporation, a Washington corporation, Additional Respondents.
Nos. 27552-0-II, 27959-2-II.
Court of Appeals of Washington, Division 2.
February 7, 2003.
*914 Glenn Jay Amster, Lane Powell Spears Lubersky, L.L.P., Seattle, Mark Brian Hansen, Bend, OR, Nathaniel Lauren Needham, Deputy Pros. Atty., South Bend, WA, for Appellants/Cross-Respondents.
Jean Marie Wilkinson, Asst. Atty. Gen., Olympia, Jeffery Murdock Eustis, Seattle, for Respondents/Cross-Appellants.
*913 BRIDGEWATER, J.
These consolidated appeals concern two land use decisions that, together, allow the Moby Dick Hotel to expand. The first concerns a Shoreline Substantial Development Permit (SSDP) that Pacific County (County) issued in favor of the Moby Dick and the Shorelines Hearings Board's (SHB) subsequent affirmance of that permit. The second decision, also by the County, amended a concomitant rezone agreement (CRA) to allow the Moby Dick's expansion. The superior court reversed the amendment, finding that the amendment was a spot zone. The Willapa Grays Harbor Oyster Growers Association (Association) challenges the SSDP, and the Moby Dick challenges the spot zone ruling.
We hold that, because the Moby Dick obtained an SSDP in 1990 to expand and modernize, which the Association did not appeal, collateral estoppel bars the Association's claim that the Moby Dick cannot expand and modernize under the 2000 SSDP. Also, substantial evidence supports the several required findings for the 2000 SSDP. Therefore, we affirm the SHB. In the consolidated challenge to the CRA, we reverse the superior court and hold that the amendment is not a spot zone and is consistent with the comprehensive plan.

FACTS
Edward and Felice Cohen purchased the Moby Dick Hotel, located in Nahcotta, Washington, in the late 1980s. Nahcotta is a small *915 community in Pacific County located on the Long Beach Peninsula. The Hotel was built in 1929 and has enjoyed a varied and somewhat storied existence, making it a tourist attraction and historical site of some import in Pacific County.
The Moby Dick site experienced a variety of zoning and permitting changes from the late 1980s to 2000. In 1989, the property was rezoned to an R 3 designation, which contemplates commercial uses such as hotels and restaurants. The rezone was made subject to a CRA that restricted permissible uses within the zone. In 1990, after obtaining the rezone and executing the CRA, the Cohens sought and received an SSDP to expand and modernize the hotel. The SSDP was required because the Pacific County Shoreline Master Program (PCSMP) places the property within a "conservancy environment[.]" Clerk's Papers (CP) (No. 27959-2-II) at 57. The Association actively opposed the hotel expansion and redevelopment but did not appeal the 1990 SSDP.
In January 1996, the Moby Dick applied for a building permit. The County did not approve the application because the proposed construction was beyond the scope of the 1990 CRA and the 1990 SSDP. The Moby Dick then applied for a new SSDP and to amend the 1990 CRA. On November 7, 2000, Bryan Harrison, the Pacific County Shoreline Administrator, issued the SSDP to the Moby Dick. The Board of County Commissioners (BOCC) affirmed the permit. The Association appealed the 2000 SSDP to the SHB. In an equally divided decision, the SHB affirmed the BOCC decision granting the 2000 SSDP. See Dep't of Ecology v. City of Kirkland, 84 Wash.2d 25, 31, 523 P.2d 1181 (1974) (tie vote of Board affirms city's decision). The SHB reasoned that the Moby Dick's proposed expansion fit within PCSMP § 8.40's exception for commercial uses and that the expansion was thus a permissible use in the conservancy environment.

ANALYSIS
I. 2000 SSDP
A. Collateral Estoppel
The Association contends that the SHB misconstrued Pacific County Shoreline Master Program (PCSMP) § 8.40[1] and that, properly construed, § 8.40 prohibits the Moby Dick expansion. We do not reach the propriety of the SHB's construction, however, because collateral estoppel bars the Association's claim.
The requirements for application of collateral estoppel are: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) applying the doctrine must not work an injustice on the party against whom the doctrine is to be applied. Malland v. Dep't of Ret. Sys., 103 Wash.2d 484, 489, 694 P.2d 16 (1985).
Here, these elements are satisfied. First, the issue presented by the 1990 SSDP was identical to the issue in 2000: whether the Moby Dick can expand and modernize within a Pacific County "conservancy shorelines" environment. PCSMP § 8.40 at 27. Second, a final judgment was rendered on the 1990 SSDP when the time for appeal of that permit expired. That judgment was rendered under the same master program regulations that existed when the County issued the 2000 SSDP. Third, the parties to both SSDPs were identical: the Association, in 1990 and 2000, actively opposed the SSDP issued, in both instances, to the Moby Dick. Finally, any injustice would befall the Moby Dick, not the Association, if the Association is not estopped. The costs of relitigation are on the Moby Dick, and the Association decided not to appeal when it had the opportunity.
In essence, the Association seeks to relitigate an issue asked and answered in 1990 and not appealed from: whether PCSMP § 8.40, which applies to commercial developments *916 in the conservancy shoreline, allows the Moby Dick to expand and modernize. Because the Association is thus collaterally estopped, its challenge to the 2000 SSDP fails.
B. PCSMP Requirements
Every project for which an SSDP is sought must be consistent with both the applicable shoreline master program, in this case the PCSMP, and chapter 90.58 RCW, the Shoreline Management Act (SMA). See RCW 90.58.140(1); Jefferson County v. Seattle Yacht Club, 73 Wash.App. 576, 870 P.2d 987, review denied, 124 Wash.2d 1029, 883 P.2d 326 (1994). The Association does not dispute whether the 2000 SSDP is consistent with the SMA. Thus, our inquiry is whether the Moby Dick's proposed development is consistent with the applicable designation § 8.40, conservancy environmentunder the PCSMP. Because the Association is estopped from raising that issue, we only inquire whether substantial evidence supports the findings that the PCSMP requires.
As PCSMP § 8.40 requires, the SHB found that the expansion contemplated by the 2000 SSDP application did not substantially change the character of the environment. The SHB stated,
Based on the site visit, architectural drawings, site plans, photographs, photographic projections of what the proposed development will look like and the testimony of the Hotel's architect, it does not appear that the proposed expansion of the Hotel will have any adverse impact on the shoreline. The existing structure and proposed expansion will be largely screened from the water. The structures will be set well back from the Ordinary High Water Mark and screened by existing vegetation.
SHB Finding of Fact 16, CP (No. 27959-2-II) at 60 (footnote omitted).
In addition, PCSMP § 8.42.02 requires that "[a]ny commercial facility or structure which is built shall be ... of inconspicuous appearance so that it either blends with its surroundings or at minimum does not detract from them." PCSMP § 8.42.02 at 27. The SHB stated,
The proposed development will be more visible from the public road to the west. The proposed development will, however, blend in with the existing structure as designed.... The proposed development will not in any case significantly impact views of the shoreline due the existence of the vegetative buffer between the structure and water.... There is no expected adverse impact to the water quality in the Willapa Bay from the operation of the Hotel under the proposed development.
SHB Finding of Fact 16, CP (No. 27959-2-II) at 60-61.
Substantial evidence supports the substantial change and inconspicuous appearance findings. Larry Warnberg, a neighbor and oyster farmer, testified that, from the southeast, the Moby Dick appears completely hidden by trees. Also, a letter from Florence K. Lentz, a cultural resource consultant, states that "the proposed new addition has little to no impact on the fabric of the historic building, which will continue to exist in its current configuration." Moby Dick Exhibit 27. Finally, photographs of the Moby Dick property show that the hotel and proposed expansion are largely hidden by trees. As the SHB made the required findings, and because substantial evidence supports them, we affirm the SHB's decision affirming issuance of the 2000 SSDP.[2]
II. Zoning
Land uses surrounding the Moby Dick vary. Single family dwellings adjoin the Moby Dick site on the north and south, and to the west is a large field used for an occasional antique car show. Other surrounding uses include limited residential development, undeveloped residential parcels, limited commercial activity associated with Nahcotta, isolated bed & breakfast establishments, utility substations, road maintenance *917 areas, commercial oyster beds, and wetlands associated with Willapa Bay.
The Moby Dick site was first zoned in 1968 under a general development classification. In 1981, Pacific County enacted a new zoning plan for the area, which changed the Moby Dick's zone to R-1 (Restricted Residential). As the R-1 zone did not contemplate hotels/restaurants, the Moby Dick was a non-conforming use.
After purchasing the hotel and property, the Cohens applied for a rezone in hopes of making the Hotel a conforming use. The BOCC granted the rezone, changing the designation to R-3 (Resort Residential), which allows for hotels and restaurants. But, finding that "an unrestrictive rezone to R-3 would not be in the public interest[,]" the BOCC required the CRA. CP (No. 27552-0-II) at 200. The CRA stated that "the sole use of the property is for the operation of a hotel and restaurant. No other uses described in the Resort (R-3) Zoning District shall be allowed or authorized under the terms of this agreement." CP (No. 27552-0-II) at 205. The Association did not appeal the rezone decision.
Desiring more space and modern facilities, the Cohens sought to expand the Moby Dick. Because the CRA did not allow for any significant expansion or modernization, the Cohens applied in 1997 for a building permit and an SSDP. This application was denied. In 1998, the Cohens applied to amend the CRA and, once again, for an SSDP. After a protracted period of remands and other action on the Cohens' application, the BOCC amended the CRA[3] in October 2000 to allow for the Cohens' proposed changes.[4] As Pacific County had not yet adopted development regulations, RCW 36.70B.040 required the BOCC to judge the amendment's consistency with the applicable comprehensive plan.
The County adopted its first comprehensive plan in 1989. The 1989 Plan designated the Moby Dick property "Country Estate." CP (No. 27552-0-II) at 190. In 1998, the County adopted a new plan. The 1998 Plan designated the property "General Rural." CP (No. 27552-0-II) at 191. The BOCC determined that the amendment was consistent with both plans.
The Association appealed the BOCC's amendment to the superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The court reversed the BOCC and found that the amendment "constitutes spot zoning [and] is inconsistent with the current zoning of the surrounding properties and generally inconsistent with the comprehensive plan." CP (No. 27552-0-II) at 282. The Moby Dick appeals this decision.
A. Consistency with the Comprehensive Plan
LUPA provides a statutory standard of review for land use petitions. Under RCW 36.70C.130, an appellate court may grant relief from a land use decision if the petitioner carries its burden in establishing one of six standards of relief:

*918 (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130.
We may grant relief only if the Association, the party seeking review from the land use decision, has carried the burden of establishing that one of these standards has been met. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 91 Wash.App. 1, 25-26, 951 P.2d 1151 (1998), aff'd in part, rev'd in part, 138 Wash.2d 161, 979 P.2d 374 (1999). To grant relief under this chapter, we need not find that the local jurisdiction engaged in arbitrary and capricious conduct. RCW 36.70C.130(2). Furthermore, we apply these standards in reviewing a decision based on the record created before the hearing examiner. Cent. Puget Sound, 91 Wash.App. at 26, 951 P.2d 1151 (citing RCW 36.70C.120(1); 36.70C.130(1)).
The parties agree that the BOCC's decision to amend the CRA required it to apply law (the applicable comprehensive plan) to facts (the circumstances attending the Moby Dick's amendment). Thus, LUPA requires that the BOCC's decision be upheld unless it is clearly erroneous. RCW 36.70C.130(d). When a decision is clearly erroneous, it leaves the reviewing court with the definite and firm conviction that a mistake has been committed. Schofield v. Spokane County, 96 Wash.App. 581, 586, 980 P.2d 277 (1999).
Our review is deferential to factual determinations by the highest forum below that exercised fact-finding authority. Schofield, 96 Wash.App. at 586, 980 P.2d 277. We view the evidence and any reasonable inferences in the light most favorable to the party that prevailed in the highest forum exercising fact-finding authority. Davidson v. Kitsap County, 86 Wash.App. 673, 680, 937 P.2d 1309 (1997). Thus, we view the evidence in a light favorable to the Moby Dick.
A proposed land use decision must generally conform to a county's comprehensive plan. Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 873, 947 P.2d 1208 (1997). But, "the provisions in the plan are to be used as a planning guide, not a land use decision-making tool. In other words, strict adherence is not required." Citizens for Mount Vernon, 133 Wash.2d at 873, 947 P.2d 1208; Schofield, 96 Wash.App. at 587, 980 P.2d 277. "The plan is only a general blueprint and thus only general conformance is necessary." Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County, 96 Wash.2d 201, 212, 634 P.2d 853 (1981). As case law clearly indicates that a comprehensive plan is more general guide than precise scheme, the stringent compliance standard that the Association advocates does not apply. Rather, the CRA amendment must only generally conform to the comprehensive plan.
We analyze the amendment's compliance with the plan in effect at the time of amendment: the 1998 Plan. The 1998 Plan designates the Moby Dick property General Rural. The Plan describes General Rural as follows:
2.6.2.2 General RuralOne Unit Per Five Acres
The purpose of this designation is to maintain the rural aspects of the county and to provide buffering or transitions between existing rural developments and areas of higher or lower densities. The General Rural areas are characterized *919 by activities including, but not limited to, small-scale farms and forestry activities, dispersed single-family homes, and open space. The maximum density is one dwelling unit per five acres. Lands are typically too far from the urban area to enable cost-effective provision of public services nor do typical uses require provision of urban services.
CP (No. 27552-0-II) at 246.
The Plan also lists several policies. Policy SMP 1.7:
Historic/Cultural/Scientific/Educational
1. Identify, protect, preserve, and restore important archaeological, historical, and cultural cites located in shorelands.
2. Encourage educational projects and programs that foster a greater appreciation of the importance of shoreline management, maritime activities, environmental conservation, and maritime history.
3. Prevent public or private uses and activities from destroying or damaging any site having historic, cultural, scientific or educational value without appropriate analysis and mitigation.
CP (No. 27552-0-II) at 245.
From this general framework, the BOCC concluded that:
[s]ince [the General Rural] designation does not specifically disallow commercial enterprises, the proposed expansion is not in direct conflict with the Comprehensive Plan. Moreover, the General Rural category seeks "to maintain the rural aspects of the county ... [.]" [Comprehensive Plan, p. 2-21.] Because the proposed expansion would not change the essential "rural" nature of the surrounding area the applicant's proposal is consistent with the current Comprehensive Plan. It also was not the intent of Pacific County at the time of adoption of the current Comprehensive Plan to exclude all commercial development in areas classified as General Rural.
CP (No. 27552-0-II) at 19.
The designation's unrestrictive language and the circumstances attending adoption of the 1998 Plan indicate that General Rural contemplates at least some commercial use. The designation specifically states that permissible uses are "not limited to" forestry, single family residential, small scale farms, and open space. CP (No. 27552-0-II) at 246. A reasonable inference from this language is that the plan drafters expected growth and change, and desired that the area be adaptable. Also, the existing hotel (a commercial use) was built in 1929. The drafters of the 1998 Plan certainly knew and considered this use when they designated the property General Rural. Together, the open-ended characterization of General Rural and the fact that a commercial use pre-dated the General Rural designation indicates that the designation contemplates at least some commercial use.
"Further, the use of the Moby Dick as a small, historic hotel is coincident with various goals and policies ... [such as] identifying and encouraging the preservation of lands, sites, and structures that have historical or archaeological significance, and to `promote economic opportunity for all citizens of this [C]ounty.'" Appellant's Br. at 27 (citing CP (No. 27552-0-II) at 243). As the Moby Dick property is located on the Long Beach Peninsula, its maritime roots and history are a likely source of regional pride and an element of the region's tourist attraction. Modernizing a historic site for economic viability seems directly in line with the County's policy on historically significant sites.
In addition to the CRA amendment being within the contemplation of the General Rural designation, we must consider that (1) the comprehensive plan is only a general guide for future development, and (2) the BOCC's decision should stand unless clearly erroneous. With this deference in mind, we conclude that the BOCC's decision was not a clearly erroneous application of the 1998 Plan to the proposed amendment.
B. Spot Zoning
The Association alleges, and the superior court found, that the amendment to the CRA was a spot zone because it does not serve the "broader public interest[.]" Br. of Resp't at 34. Moby Dick contends that the public interest is advanced because the BOCC action ensures the economic viability *920 of one of the County's historic sites. Because evidence shows that it did advance the public interest, the action was not an illegal spot zone.
Spot zoning is "zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land and is not in accordance with the comprehensive plan." Smith v. Skagit County, 75 Wash.2d 715, 743, 453 P.2d 832 (1969); accord Lutz v. Longview, 83 Wash.2d 566, 573-74, 520 P.2d 1374 (1974); Chrobuck v. Snohomish County, 78 Wash.2d 858, 872, 480 P.2d 489 (1971). The main inquiry is whether the zoning action bears a substantial relationship to the general welfare of the affected community. See Parkridge v. City of Seattle, 89 Wash.2d 454, 460, 573 P.2d 359 (1978). Only where the spot zone grants a discriminatory benefit to one or a group of owners to the detriment of their neighbors or the community at large without adequate public advantage or justification will the county's rezone be overturned. See Anderson v. Island County, 81 Wash.2d 312, 325, 501 P.2d 594 (1972).
The amended CRA allows uses on the Moby Dick property that are not permitted on surrounding properties. But as demonstrated above, the use that the amendment enables is consistent with the applicable comprehensive plan. Although the amendment and the plan are consistent, courts attach more importance to the rezone's impact on community welfare. Therefore, we must decide whether the amendment advanced the public interest.
Although the BOCC did not specifically find a public benefit, it made multiple findings of fact that address the issue. As the Association does not challenge these findings, they are verities before this court. See State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). The BOCC found,
26.... The sewage and water systems have sufficient capacity to accommodate the expanded hotel and restaurant impacts.
27. The existing commercial driveway access is sufficient[.]
28. The existing landscaping plan ... is predicted to be sufficient in providing an adequate vegetative screen between the Moby Dick Hotel and the adjoining land uses.
30.... These [Willapa Bay] wetlands will not be impacted by this proposed expansion.... This project is consistent with the wetland regulations of Pacific County Ordinance No. 147B[.]
....
36.... The proposed expansion would make the hotel compliant with the Americans with Disabilities Act (ADA).
....
47. The proposed expansion ... will not interfere with the normal public use of public shorelines.
48.... [T]his project promotes the rehabilitation and preservation of an historic resource of Pacific County.
49. The applicant's proposed expansion will improve the economic viability of the Moby Dick Hotel without substantially affecting the environment of the surrounding area.
50. The proposed expansion of the Moby Dick Hotel will not impact views to or from the shoreline.
51. No credible evidence has been submitted into the record suggesting that approval of the applicant's proposed expansion would harm the shoreline or negatively impact the Willapa Bay in any significant or material way.
CP (No. 27552-0-II) at 15-17.
From these findings of fact, the BOCC concluded that "[t]he proposed expansion of the ... Hotel will not be materially detrimental to the public welfare[,]" and that "[t]he public interest will suffer no substantial detrimental effect if the concomitant agreement is modified[.]" CP (No. 27552-0-II) at 19. These findings and conclusions establish that the BOCC action will advance the public interest in that it will enable the modernization and continued success of a Pacific County historical site. As the County attaches great importance to its historical sitesas the goals and policies of its comprehensive *921 plans provewe accept this as a public benefit. Also, the BOCC specifically found that no harm or injury will befall surrounding landowners by the Moby Dick rezone. There was no illegal spot zone. We reverse the superior court and affirm the BOCC.
III. Administrative Record Costs
The Association contends that the superior court abused its discretion when it did not assess Moby Dick for a portion of the costs that the Association incurred in preparing the record. Moby Dick argues that the superior court was within its discretion.
RCW 36.70C.110(4) governs cost disbursements in LUPA appeals.[5] As the Association prevailed in the superior court, an equitable assessment of costs was necessary. The judgment and order assessed Moby Dick $235, consisting of a $125 statutory attorney fee and a $110 filing fee. The superior court assessed nothing against Moby Dick for the cost of the Association's record preparation, which totaled $1,163.25; nor did it provide reasons or justifications for doing so. Although we could infer from its assessment of other costs that the superior court did consider and equitably assess transcription costs, we cannot determine whether the superior court's reasons for the non-assessment were untenable because we have no record of the proceedings there. As such, we cannot review whether not assessing the Moby Dick any portion of the transcription costs was an abuse of discretion.
We reverse the superior court and affirm the Shorelines Hearings Board.
We concur: SEINFELD, P.J., and ARMSTRONG, J.
NOTES
[1] Section 8.40 regulates uses of land contained within what is designated a "Conservancy Environment." Section 8.40 provides that "[c]ommercial uses shall be prohibited on conservancy shorelines, except for those low intensity recreational developments or activities which do not substantially change the character of that environment." PCSMP § 8.40 at 27.
[2] We do not reach the Association's non-conforming use argument. PCSMP 2.29 states that a non-conforming use is a use that is prohibited. Because the Association is estopped from claiming that the Moby Dick expansion is prohibited under PCSMP § 8.40, we cannot deem the hotel expansion a prohibited, and thus, non-conforming use.
[3] The Association argues that the amendment was a rezone, which requires a showing of changed circumstances. But, the Association did not raise the issue before the BOCC, and it does not appear that the Association raised the issue at the superior court either. If the Association did raise the issue at superior court, it has not assigned error or taken a cross appeal to the failure of the superior court to find that the amendment was a rezone. Therefore, we decline review of the issue. RAP 5.3(a), 10.3(g).
[4] The BOCC summarized the proposed expansion:

The existing structure contains 4,760 square feet within a building footprint of 2,360 square feet.
... The proposed expansion consists of 8,448 square feet within a building footprint of 3,938. Lot coverage upon completion of the proposed expansion will be approximately 2.2 % of the site.
... The height of the existing Moby Dick Hotel is 23.5 feet. The proposed expansion would bring the height of the structure to 33 feet.
... The existing Moby Dick Hotel contains 11 guest rooms. The proposed expansion would not increase the number of available guest rooms.
....
... The proposed expansion provides for larger guest rooms, a management apartment, owner accommodations, rest[ ]room facilities for each room and larger restaurant space.
CP at 15-16 (No. 27552-0-II).
[5] "Record for judicial reviewCosts.... (4) If the relief sought by the petitioner is granted in whole or in part the court shall equitably assess the cost of preparing the record among the parties. In assessing costs the court shall take into account the extent to which each party prevailed and the reasonableness of the parties' conduct in agreeing or not agreeing to shorten or summarize the record ... [.]" RCW 36.70C.110(4).