IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) |
| | ) No. 72600-5-I |
| SHAWNA L. HUBBARD f/k/a | ) |
| SHAWNA L. ROSS, | ) DIVISION ONE |
| | ) |
| Respondent, | ) |
| | ) |
| and | ) UNPUBLISHED OPINION |
| | ) |
| MARCUS T. ROSS, | ) FILED: January 19, 2016 |
| | ) |
| Appellant. | ) |

BECKER, J. — Marcus Ross appeals trial court orders allowing the

relocation of his former spouse, Shawna Hubbard, with whom his children reside

the majority of the time. He contends that the court erred in allowing Hubbard's

petition to relocate to proceed to a hearing after he raised objections to the

sufficiency of service. But the court granted a continuance, the relief that Ross

requested. He fails to establish that he was entitled to a different remedy. We

are unable to review the other issues Ross raises because he has failed to

provide an adequate record to permit appellate review and because the child

support order is not properly before us on appeal. We affirm.

FACTS

Marcus Ross and Shawna Hubbard are the parents of two sons, ages 10 and 12. They separated in 2006. In 2009, the court entered final agreed orders dissolving their marriage and providing for the care and support of their children. Although the original 2009 orders are not included in the record on appeal, it appears that the 2009 parenting plan imposed restrictions on Ross under RCW 26.09.191 based on a finding of a history of domestic violence. It further appears that the plan provided for the children to reside with Hubbard for the majority of the time, but also provided for substantial residential time with Ross.

On April 7, 2014, approximately five years after entry of the final orders, Hubbard filed a notice of intent to relocate, seeking to move by June 14 from Mukilteo, Washington, to Skykomish, Washington. Hubbard explained that unaffordable housing costs required her to move and asserted that she had employment prospects in the Skykomish area. Within a week, Ross filed an objection. He argued that Hubbard's relocation to Skykomish would disrupt his residential time with his sons because midweek visitation would not be feasible and that the relocation would be detrimental to the children. In May 2014, the court entered a temporary order restraining Hubbard from relocating prior to a final hearing on the request.

On July 14, 2014, Hubbard filed an amended notice of intent to relocate, stating that she now intended to relocate, not to Skykomish, but to Monroe, Washington, by August 1. Again, Ross promptly objected. He pointed out that Hubbard failed to request leave to amend her notice of intent to relocate and had

2

not complied with RCW 26.09.440 by personally serving him with a copy of the amended notice or providing 60 days' notice. Ross stated that he was severely prejudiced by the late notice of Hubbard's intent to move to a different location and would not be prepared to proceed to trial on August 11. He requested a month-long continuance.

At a pretrial conference on July 29, Ross orally restated his objections to notice. He argued that the "bottom line is that we need to continue this" to allow him time to investigate the new proposed location. Hubbard opposed continuing the hearing. The court agreed with Ross and rescheduled the hearing.

Over the course of three days in September 2014, the court held a hearing on Hubbard's petition to relocate. Hubbard initially represented herself, but was represented by counsel at the hearing. Ross, on the other hand, was represented by counsel when Hubbard filed her initial notice of intent to relocate, but thereafter represented himself.

Following the hearing, the court entered an order allowing Hubbard to relocate. At the same time, the court entered a new parenting plan to effectuate minor adjustments to the residential schedule necessitated by the relocation and a new order of child support. Ross has appealed the order on relocation and the parenting plan, but not the order of child support. Although Ross filed proof of service with respect to documents he filed in this case, Hubbard sent correspondence to this court denying notice of any documents related to the appeal. As a precaution, this court sent Hubbard a copy of Ross's brief, allowed her additional time to file a responsive brief, and informed her that if she failed to

file a brief, the appeal would proceed without a respondent's brief. Hubbard has not filed a responsive brief.

OBJECTIONS TO SUFFICIENCY OF SERVICE

Representing himself on appeal, Ross does not challenge the court's decision to allow Hubbard's relocation. Instead, he complains that while he timely and specifically objected to Hubbard's failure to serve him with the amended notice of intent to relocate, the trial court nevertheless erroneously proceeded to a hearing over his objections.

Under the parental relocation provisions in chapter 26.09 RCW, a person with whom a child resides the majority of the time must notify every person with residential time or visitation of an intent to relocate. RCW 26.09.430. The statute requires the parent who wishes to relocate to provide notice no less than 60 days before the intended relocation by personal service or by any form of mail requiring a return receipt. RCW 26.09.440 (1)(a), (b). There is nothing in the record to suggest that Hubbard's initial notice did not comply with these requirements.

Ross's claim that the trial court erred in allowing a hearing on Hubbard's proposed relocation ignores the fact that the court provided the exact remedy he requested: a continuance. Ross fails to argue or establish that any other remedy was appropriate under the circumstances. The statute provides that if a parent fails to provide timely notice of intent to relocate and the nonrelocating parent has been substantially prejudiced, the court may enter a temporary order restraining the relocation. RCW 26.09.510(1)(a). Such an order restraining

4

relocation was already in place when Hubbard filed the amended notice. Even where a parent actually relocates with a child in the absence of any notice, the statutory remedy is entry of a temporary order to return the child. RCW 26.09.510(1)(b). Ross fails to demonstrate that the court erred when it held a hearing after granting a continuance.

## RCW 26.09.191 RESTRICTIONS

With respect to the 2014 parenting plan and the order allowing relocation, Ross contends that the court erred in imposing restrictions under RCW 29.09.191 and should have ordered joint decision-making and equal residential time with each parent. Ross also claims that before trial, the court assured him that it would admit and consider only evidence relating to events that occurred after entry of the 2009 parenting plan. He asserts that contrary to those assurances, the court inconsistently and inappropriately considered evidence about alleged domestic violence that occurred around the time of the parties' separation and relied on that evidence to conclude that restrictions were still warranted.

In the 2014 parenting plan, the court found that Ross has a "history of acts of domestic violence" under RCW 26.09.191(c). However, the court also found that Ross had completed all of the requirements imposed in the previous parenting plan and "therefore there are no restrictions in this parenting plan that are related" to the finding of domestic violence history. The court imposed a new residential schedule whereby the children reside with Ross on alternating weekends and one night per week on alternating weeks. The plan provides for

Ross's residential time to increase if he moves closer to the Monroe school district. The parenting plan allocates major decision-making to Hubbard for two reasons: (1) because joint decision-making is prohibited by RCW 26.09.191 and (2) because one parent is "opposed to mutual decision making, and such opposition is reasonably based" on the criteria set forth in RCW 26.09.187(2)(c).[1]

With respect to relocation, one of the factors the court was required to consider was whether either parent was subject to restrictions under RCW 26.09.191. RCW 26.09.520(4). Accordingly, the court found:

> The father is subject to restrictions under RCW 26.09.191. The evidence clearly supports the 191 restrictions. A criminal case has a higher standard of proof than a civil case, and in this case the standard is by a preponderance of the evidence. The court finds that domestic violence occurred between the parties. The mother's testimony is credible. The medical evidence is objective corroborating evidence and the mother's testimony about the events surrounding the medical evidence is credible.
>
> The emotionality of a witness is not a determining factor of credibility. The court did not find that the mother's testimony was inconsistent.

The court did not violate a prior ruling by admitting evidence about the basis for restrictions in the 2009 parenting plan. Contrary to Ross's claim, at the July 29 pretrial conference, the court did not rule on the admissibility of any evidence. Ross indicated that he intended to demonstrate at the hearing that

---

[1] The criteria set forth by RCW 26.09.187(2)(c) are as follows:
(i) The existence of a limitation under RCW 26.09.191;
(ii) The history of participation of each parent in decision making in each of the areas in RCW 26.09.184(5)(a);
(iii) Whether the parents have demonstrated ability and desire to cooperate with one another in decision making in each of the areas in RCW 26.09.184(5)(a); and
(iv) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Hubbard was using the existence of restrictions in the parenting plan as a means to undermine his relationship with his children. In response, the court merely advised Ross that (1) he could not relitigate the finding of a history of domestic violence in the original parenting plan and (2) evidence about his current circumstances and changes he had made since entry of the 2009 order would be most helpful to the court in determining whether restrictions should be imposed in a new parenting plan.

Later, at the outset of the hearing on relocation, Ross asked the court to strike several of Hubbard's proposed exhibits because the court considered the evidence when it entered the 2009 final orders. He argued that the court was barred by res judicata and collateral estoppel from considering the same documentary evidence. The court denied the motion to strike, noting that while the time period from entry of the final parenting plan to the present was "most relevant," the court would not ignore "the history of the parties in the case." And while denying Ross's "blanket objection" to exhibits considered at the time of dissolution, the court explained that Ross could renew a specific objection to any exhibit when and if Hubbard sought its admission.

Insofar as Ross also contends that the evidence does not support the imposition of RCW 26.09.191 restrictions as stated in either the order on relocation or the 2014 parenting plan, the record is not sufficient to allow for appellate review. A party seeking appellate review has the burden of providing this court with the evidence in the record relevant to the issues before us. RAP 9.2(b); Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

7

Ross has provided only a limited record for review. Specifically, the verbatim report of proceedings includes only the initial 10 minutes of the first day of the three-day hearing. It does not include any witness testimony or arguments made to the court. Nor does the record include any of Hubbard's trial exhibits. Without an adequate trial record, we cannot review the evidentiary basis for the court's findings. As is the case here, an insufficient record on appeal generally precludes appellate review. Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

CHILD SUPPORT ORDER

Ross next raises several claims with regard to the 2014 child support order. For several reasons, we decline to address them. First, we will generally review only "the decision or parts of the decision" the appellant designates in the notice of appeal. RAP 2.4(a); see also RAP 5.3(a)(3) (notice of appeal must designate decision for review). Ross did not designate the order of child support in his original or amended notice of appeal. Nor did he designate any other trial court decision prejudiced by the October 2014 order of child support, which may have allowed for our review under RAP 2.4(b). We decline to address Ross's claims for failure to comply with the applicable appellate rules. See, e.g., Willapa Grays Harbor Oyster Growers Ass'n v. Moby Dick Corp., 115 Wn. App. 417, 426 n.3, 62 P.3d 912 (2003). Second, to the extent Ross argues that aspects of the order of support are unsupported by the evidentiary record, as explained, the limited trial record is inadequate to review this claim.

And finally, in addition to challenging the order of support, Ross appears to challenge Hubbard's compliance with the child support order's provision for the payment of day care expenses following entry of the order. To that end, Ross attaches numerous documents as appendices to his brief, some of which were created after entry of the October 2014 order, and asks this court to consider this additional evidence under RAP 9.11. But this rule applies only where "the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive." RAP 9.11(4). Ross makes no attempt to establish that this is the case. For all of these reasons, we decline to consider Ross's challenges involving the 2014 order of child support.

Affirmed.

Becker, J.

WE CONCUR: