[No. 38055-9-I.   Division One.   June 9, 1997.]

MILLARD DAVIDSON, *Respondent,* v. KITSAP COUNTY, *Appellant.*

*Charles K. Wiggins*, for appellant.
*Gerald A. Kearney*, for respondent.

Cox, J. — Kitsap County appeals an order reversing the denial of an application to provide access to a proposed subdivision from a county road known as Carriage Drive. The County contends that the doctrine of res judicata barred the application and that substantial evidence supports the decision. We agree and reverse the trial court decision.

Mick Davidson owns an undeveloped 46-acre parcel of land in north Kitsap County. In April 1990, he applied to the Kitsap County Board of Commissioners to plat the parcel under the name High Haven. Davidson's application proposed 18 single-family lots. He initially contemplated providing access to the development from State Route 104, which borders the parcel on the south. Davidson subsequently revised his design to provide access from

Carriage Drive, a county road that approaches the proposed plat from the northwest. Carriage Drive bisects Daparwood, a neighboring subdivision, and is separated from Davidson's parcel by a 10-foot-by-60-foot "street plug." The drive connects with Hansville Road, which intersects SR 104 to the south.

At the time of Davidson's application, the residents of Daparwood vigorously opposed the request to use Carriage Drive for access to High Haven. They maintained that the increased traffic would destroy the rural setting of the neighborhood, would be unsafe due to the steep grade of portions of the road, and would require the removal of many old growth trees. Several residents also stated that they had purchased lots in Daparwood after receiving assurances that Carriage Drive would never service adjoining communities. The Daparwood residents also presented evidence that the 1971 Planning commission approved the preliminary plat subject to a number of conditions. One of them was:

4. That a temporary cul de sac be installed at the east end of the northerly [Carriage Drive] roadway; *and that a 10 foot street plug be dedicated to the County to assure that no access from the adjacent properties will take place inasmuch as these roads are not to be brought up to minimum standards on the east end of the northerly road [Carriage Drive.]*[1]

In support of his application, Davidson raised a public safety concern. He testified that the stretch of SR 104 on the south side of High Haven has a higher accident rate than any other section of highway in the state. Thus, providing access to the plat from that point was a safety problem. He further presented evidence that the Washington State Department of Transportation (DOT) had adopted a general policy of directing access to the county road system to improve public safety. Based on this policy, DOT supported providing access to High Haven through Carriage Drive.

---

[1](Emphasis added.)

In November 1990, the Board of Commissioners approved the proposed plat, subject to the condition that access not be provided by way of Carriage Drive. It also entered its findings of fact and conclusions of law, the relevant portions of which are set forth below. The Board found:

14. The proposed plat and PUD contemplates [*sic*] access through Carriage Drive, a gravel road serving the plat of Daparwood. This road is maintained by the residents of Daparwood and incorporates a ten foot "street plug" where it adjoins the northwest corner of the subject property.

15. The Plat of Daparwood, incorporating the street plug, was recorded November 30, 1972. Removal of a street plug requires formal action of [*sic*] by the Board of County Commissioners pursuant to a public hearing.

16. The street plug was required to limit traffic through Daparwood and gravel-surfaced Carriage Drive that is maintained by the Daparwood owners. Residents and owners of lots in Daparwood have expressed opposition to removal of that street plug.

The Board concluded:

10. . . . that it would be inappropriate to remove the street plug at the west [*sic*] end of Carriage Drive, due to the intent of its incorporation into the plat of Daparwood and the opposition to the removal by residents/owners in that plat.

11. The Board concludes that approval of the subject plat/PUD with access via Carriage Lane is not necessary for the preservation and enjoyment of the substantial property right of the petitioner and will be materially detrimental to the public welfare and to the property of other persons located in the vicinity.

Davidson did not appeal this decision.

Four years later, Davidson submitted a revised plat application for High Haven. The 1994 revised plat increased density from 18 to 25 lots. But it again contemplated access from Carriage Drive. A letter from DOT stated that it had denied a request to construct a permanent road approach from High Haven to SR 104. Quoting RCW 47.50 and WAC 468-52, DOT noted that Washington law requires that:

> "private direct access to the state highway system be permitted only when the property has no other reasonable access to the general system". This parcel has reasonable access to NE Carriage Drive and the Hansville Road as shown on the plat map. Therefore, the Department is unable to grant direct access to SR 104 at this location.

Both DOT and the Kitsap County Department of Public Works (DPW) testified that they strongly recommended using Carriage Drive to provide access because of the safety concerns surrounding private access to SR 104. DOT admitted that it would be required to allow access if there were no other option available.

As expected, the Daparwood residents again vigorously opposed Davidson's application. In addition to repeating the arguments they had made in 1990, they argued that Davidson's application had been denied in 1990. One resident who had purchased his Daparwood property in 1992 stated that he had made the purchase only after research revealed that access to adjoining parcels could not be obtained through Carriage Drive.

The hearing examiner who considered the application recommended approval. But he concluded that the use of Carriage Drive to provide access to the development would have to be determined by the Board of Commissioners. His recommendation included the following condition:

> 1. In the event that the project ultimately makes use of Carriage Drive for access, the project should be limited to 18 lots as previously approved and in accordance with the zoning and density established for the plat and compatible with the

adjacent and impacted Daparwood subdivision. If the Applicant otherwise is successful in providing access to the south, the density request contained in the Application [25 lots] is appropriate and should be granted.

Thereafter, Davidson filed an application to remove the street plug blocking access to Carriage Drive. Shortly thereafter, he also filed an objection to the hearing examiner's recommendation limiting density to 18 lots in the event access was granted by way of Carriage Drive.

The Board of Commissioners held a public hearing on Davidson's application to remove the street plug. DOT again recommended that access to High Haven be provided by way of Carriage Drive rather than SR 104. It cited the safety concern of creating another conflict point on an already accident-ridden section of highway. It also referred to the 1991 legislation that encourages new access through existing county roadways.

Counsel for the Daparwood residents argued that if a given parcel has no access to a county road, the State must grant access to a property owner whose property abuts a state highway. He further argued that Davidson had no access to a county road because of the 1971 dedication of the street plug at the end of Carriage Drive.

The Board approved Davidson's application, but denied access from Carriage Drive. The Board did not enter written findings of fact and conclusions of law for this decision.

Davidson sought a writ of certiorari in the King County Superior Court.[2] The court reversed the decision of the Board of Commissioners and required Kitsap County to

---

[2]RCW 36.01.050 ("All actions against any county may be commenced in the superior court of such county, *or of the adjoining county*, and all actions by any county shall be commenced in the superior court of the county in which the defendant resides, or in the county adjoining the county by which such action is commenced.") (emphasis added).

grant Davidson access to High Haven by way of Carriage Drive. Kitsap County appeals.

## I
### Standard of Review

■ Appellate review of a board of commissioners' decision under a writ of certiorari is governed by RCW 7.16.120.[3] Under RCW 7.16.120, this court reviews issues of law de novo to determine whether the decision below was contrary to law.[4] We review factual findings to determine whether they are supported by competent and substantial evidence.[5] This review is deferential and requires the court to view

> the evidence and reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority, a process that necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.[6]

## II
### Res Judicata

Kitsap County contends that the doctrine of res judicata bars Davidson's 1994 application for access through Carriage Drive. The County argues that he never appealed the denial of his 1990 application and he fails to show a substantial change in circumstances relevant to his 1994 application. We agree.

---

[3]*Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995); *Freeburg v. City of Seattle*, 71 Wn. App. 367, 370, 859 P.2d 610 (1993).

[4]*Sunderland*, 127 Wn.2d at 788; *Freeburg*, 71 Wn. App. at 371; RCW 7.16.120(3).

[5]*Sunderland*, 127 Wn.2d at 788; *Freeburg*, 71 Wn. App. at 371; RCW 7.16.120(4)-(5).

[6]*Freeburg*, 71 Wn. App. at 371-72 (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992)).

■ Davidson contends that we should refuse to consider the issue of res judicata because Kitsap County failed to raise it before the trial court. We reject this argument. When we consider on appeal a writ of certiorari, we review the decision of the body that makes the findings and conclusions relevant to the decision. Here, that is the Board of Commissioners. Any failure to raise the issue before the trial court thus does not preclude appellate review.[7]

■■ The doctrine of res judicata bars the resurrection of the same claim in a subsequent action.[8] The doctrine applies in a quasi-judicial administrative context and stands for the general proposition that " 'a controversy should be resolved once, not more than once.' "[9] Res judicata will bar a claim when a prior final resolution has a concurrence of identity in four respects with a subsequent proceeding: " 'There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.' "[10]

■ Here, the only one of the four criteria that is in dispute is the identity of subject matter between Davidson's 1990 and 1994 applications. Our Supreme Court has stated the "elementary proposition" that subject matters are not identical if they differ substantially.[11] Thus, a second application is not barred by res judicata if "there is a substantial change in circumstances or conditions rele-

---

[7]*Snohomish County v. Hinds*, 61 Wn. App. 371, 375, 810 P.2d 84 (1991).

[8]*Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 31, 891 P.2d 29 (1995).

[9]*Hilltop Terrace*, 126 Wn.2d at 30 (quoting 4 KENNETH C. DAVIS, ADMINISTRATIVE LAW TREATISE § 21:9, at 78 (2d ed. 1983)).

[10]*Hilltop Terrace*, 126 Wn.2d at 32 (quoting *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)).

[11]*Hilltop Terrace*, 126 Wn.2d at 32.

vant to the application or a substantial change in the application itself."[12]

Davidson contends here that his 1994 application was not barred by res judicata because there was a substantial change in both the circumstances relevant to the application and in the application itself. We disagree.

There was no substantial change in the portion of the application relevant to this dispute. Davidson correctly points out that his 1994 application reflected various changes from his 1990 application. These included an increase in density from 18 to 25 lots, an increase in the number of detention ponds, and an addition of a one-half mile of bioswales. There was also an increase in open space area, a decrease in the minimum lot size as well as the average lot size, and a transfer to Public Utility District water. But only one of these changes — the increase in density — is relevant to Davidson's application to obtain access to High Haven from Carriage Drive. Moreover, the increase in density does not ameliorate the problem that led to the denial of Davidson's 1990 application. Rather, it exacerbates it. This case is thus distinguishable from *Hilltop Terrace,* which held that an owner's second application was not barred by res judicata when it contained a design that mitigated many of the adverse impacts that induced the Board of Commissioners to deny the first application.[13] We conclude that there was not a substantial change in Davidson's 1994 application.

We likewise conclude that there was no substantial change in the circumstances relevant to the application. Davidson argues that the 1991 enactment of RCW 47.50.010 constituted a substantial change of circumstances. That statute states in pertinent part:

(3) It is the policy of the legislature that:

. . . .

---

[12]*Hilltop Terrace,* 126 Wn.2d at 33.

[13]*Hilltop Terrace,* 126 Wn.2d at 28-29.

(b) Every owner of property which abuts a state highway has a right to reasonable access to that highway, unless such access has been acquired pursuant to chapter 47.52 RCW, but may not have the right of a particular means of access. The right of access to the state highway may be restricted if, pursuant to local regulation, reasonable access can be provided to another public road which abuts the property.[14]

First, the record indicates that the legislative policy set forth in the statute had already been adopted by DOT prior to the enactment of the statute. This policy was expressly argued to the Board of Commissioners at the time of Davidson's first application in 1990. Although we recognize that the Legislature, rather than DOT, expressed the 1991 policy through the enactment of the statute, this fact does not constitute a substantial change. The policy remained the same.

Second, even if RCW 47.50 reflected a new policy never before argued to the Board, Davidson's parcel does not abut on Carriage Drive. WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY defines "abut" as "to touch at one end, border on."[15] Our review of the plat shows clearly that the street plug separates Carriage Drive from the proposed plat of High Haven. Thus, the proposed plat does not abut Carriage Drive. The statute is therefore inapplicable.

Our conclusion is consistent with the policies that the doctrine of res judicata seeks to protect:

> The most purely public purpose served by res judicata lies in preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results.
>
> . . . .
>
> A second largely public purpose has been found in preserving courts against the burdens of repetitious litigation. . . .
>
> The judicial interest in avoiding the public burdens of

---

[14]RCW 47.50.010(3)(b).

[15]WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 8 (1971).

repetitious litigation is allied with the interest of former litigants in avoiding the parallel private burdens. For the most part, attention is focused on the need to protect a victorious party against oppression by a wealthy . . . adversary . . . .

The deepest interests underlying the conclusive effect of prior adjudication draw from the purpose to provide a means of finally ending private disputes. The central role of adversary litigation in our society is to provide binding answers. We want to free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs. Repose is the most important product of res judicata.[16]

We hold that Davidson's 1994 application was barred by the doctrine of res judicata.

## III

### Violation of Rule of Law

Davidson also contends that the Board's decision violates a rule of law to his prejudice.[17] Specifically, he contends his right of access to Carriage Drive as an "abutting" property owner was violated by the decision.

■ In general, the right of access of an abutting property owner to a public street is an enforceable property right.[18] Property abuts on a public street when there is no intervening land between it and the street.[19] "When prop-

---

[16]*Hilltop Terrace*, 126 Wn.2d at 30-31 (quoting 18 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4403, at 12-15 (1981)).

[17]RCW 7.16.120(3) ("The questions involving the merits to be determined by the court upon the hearing are: . . . (3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.").

[18]*Keiffer v. King County*, 89 Wn.2d 369, 372, 572 P.2d 408 (1977).

[19]*London v. City of Seattle*, 93 Wn.2d 657, 661, 611 P.2d 781 (1980); *Kemp v. City of Seattle*, 149 Wash. 197, 201, 270 P. 431 (1928), *cert. denied*, 279 U.S. 825 (1929). *See also* 10A EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS § 30.55 (3d ed. rev. 1990).

erty abuts, the lot line and street line are in common."[20]

The face of the Daparwood plat defeats Davidson's argument. The plat indicates that "Parcel B" (the street plug) is at the east end of Carriage Drive. It is a 10-foot-wide strip of land dedicated to Kitsap County. It is not a part of Carriage Drive. Because of the existence of Parcel "B," Davidson's lot line and the street line are not in common. Rather, they are separated by 10 feet. Given the intervening strip of land between Davidson's parcel and Carriage Drive, we conclude that Davidson's parcel does not abut on Carriage Drive. He thus had no right of access that was defeated by the Board's decision.

Citing the testimony of James Roda, an agent of the County's Department of Public Works, Davidson argues that Kitsap County nonetheless admitted that Carriage Drive extends through Daparwood to the west line of his property. Mr. Roda testified before the Board of Commissioners that the street plug is part of the county road system because "the entire right-of-way length of Carriage Drive goes from the eastern right-of-way line of the Hansville Road to [the] east line of the plat. The street plug is [the] east 10 feet of the roadway, which is 10 feet in length." Notwithstanding this testimony, it contradicts the face of the Daparwood plat. The plat explicitly designates the street plug as a parcel separate and distinct from Carriage Drive. The Board was free to reject the testimony of Roda and accept the plat evidence.

Citing the administrative record, Davidson asserts that "[a]ll streets are dedicated for public use on the face of the Daparwood plat including the street plug." Contrary to Davidson's assertion, however, neither the portion of the record he cites nor the Daparwood plat states that the street plug was dedicated for public use.

Davidson also asserts, without citation to authority, that Kitsap County could not deprive him of access to a county road based on a plat approval in 1971 to which nei-

---

[20]*Kemp*, 149 Wash. at 201.

ther he nor his predecessors in interest were parties. But a county "may exercise its police power to restrict the flow of traffic in residential areas and included in this power is the power to restrict the use of certain streets with permanent barricades."[21] We reject Davidson's contention to the contrary.

We also reject Davidson's contention that Kitsap County failed to require a waiver of his right of access under RCW 58.17.165. Even if that statute did apply here, an assertion on which we express no opinion, the waiver language is permissive, not mandatory. There was no necessity to obtain a waiver from Davidson.

Finally, citing RCW 36.75.140, Davidson asserts that the creation of the street plug was in conflict with state law. However, because RCW 36.75.140 applies only to "abutting property," and Davidson's parcel does not abut on Carriage Drive, the creation of the street plug did not conflict with state law.

IV

Substantial Evidence

Davidson next contends that the Board's decision to deny access through Carriage Drive is not supported by substantial evidence. He argues that it was made in direct contravention of the recommendation of its own public works department as well as the recommendation of DOT. But that was not the only evidence before the Board of Commissioners. In addition to the recommendations of public works and DOT, the Board considered the intent of the county planners and the Daparwood grantors regarding the use of Carriage Drive. It also considered the expectations of the Daparwood residents regarding the preservation of the character of their neighborhood.

According to the testimony of one witness, the county

---

[21] 10A Eugene McQuillin, Municipal Corporations § 30.63, at 382 (3d ed. rev. 1990).

planners intended Daparwood to be a stand-alone development whose roads would not access neighboring communities:

> The word "plug" was used to show the intent that the road end would be closed off forever and therefore would not be opened in the future for anyone.
>
> . . . .
>
> 5. Had there been an intent that the road might be opened in the future, that would have been specifically noted in the Minutes of the Planning Commission, the strip of land would not have been described as a "plug" and a proviso allowing opening of the road would have been noted on the plat.

Moreover, a letter from one of the Daparwood developers explained that they were required by the county planners to deed a "plug" to the County for the specific purpose of *preventing* future developments from using the streets of Daparwood as a thoroughfare. Finally, the Daparwood residents presented evidence that the increased traffic would destroy the rural setting of their neighborhood, would be unsafe, and would require the removal of many old growth trees.

■ Viewing this evidence and the record as a whole in the light most favorable to Kitsap County, we conclude that substantial evidence supported the Board's decision. Although the safety issue raised by DPW and DOT was certainly of no small significance, it was but one factor among many presented to the Board. There was a sufficient quantity of evidence in the record to persuade a fair-minded, rational person that the county planners and the Daparwood grantors intended that the Carriage Drive street plug would permanently bar access from neighboring developments.

Although Davidson challenges the Board's failure in 1995 to enter a specific finding that the street plug would permanently bar access, the Board did enter such a finding in 1990. Davidson fails to present any authority why a

new finding in 1995 was necessary where the facts remained unchanged. The entry of such a finding would be of no use to us in review of the record.[22] It is perfectly clear that no new facts regarding the intent to keep the street plug arose between the 1990 and 1995 hearings.

We hold that the trial court erred in substituting its own judgment for that of the Board of Commissioners.

We reverse the trial court's decision and reinstate the decision of the Kitsap County Board of Commissioners.

KENNEDY, A.C.J., and ALLENDOERFER, J. Pro Tem., concur.

---

[22]*See Gary Merlino Constr. Co. v. City of Seattle,* 108 Wn.2d 597, 603-04, 741 P.2d 34 (1987).