[No. 30033-8-II.   Division Two.   May 25, 2004.]

PAUL DeTRAY, *Appellant*, v. THE CITY OF OLYMPIA, *Respondent*.

*Carolyn A. Lake* (of *Goodstein Law Group, P.L.L.C.*), for appellant.

*William D. Kamerrer* (of *Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.C.*) and *Bob C. Sterbank, City Attorney*, for respondent.

HUNT, J. — Paul DeTray appeals the superior court's summary judgment dismissal of his land use (LUPA)[1] petition, in which he challenged the City of Olympia's

---

[1] Land Use Petition Act, chapter 36.70C RCW.

conditions for approval of his proposed mobile home park development. DeTray argues that (1) res judicata does not bar his appeal of the conditions because he made substantial changes to his original development application, for which the conditions were first imposed; (2) he exhausted all administrative remedies; and (3) the conditions violate RCW 82.02.020 because they are disproportionate to the actual impacts of his proposed project.

Agreeing with the superior court that res judicata bars DeTray's land use petition, we affirm.

## FACTS

### I. FIRST APPLICATION

In August 2000, Paul DeTray filed his first land use application for the Colonial Estates Mobile Home Park Phase III (Park) in Olympia. His application proposed a 55-unit mobile home park for senior citizens, to be built on 13.35 acres abutting Chambers Lake and accessed by a 22-foot-wide private road. DeTray applied for two conditional use permits (CUPs), one under the Olympia Zoning Ordinance, and one under the Thurston Region Shoreline Master Program.

### A. Original MDNS

Following State Environmental Policy Act (SEPA)[2] review, on March 23, 2001, the City's responsible SEPA official issued a mitigated determination of nonsignificance (MDNS) (2001 MDNS). This 2001 MDNS imposed two SEPA-based mitigating conditions, requiring DeTray to construct and to dedicate to the City (1) a 500-foot extension of the Chambers Lake Loop pedestrian trail, in compliance with the Parks and Open Space chapter of Olympia's

---

[2] Chapter 43.21C RCW.

Comprehensive Plan;[3] and (2) a public "local access street," extending from 14th Avenue on the northern boundary of the property to the southern boundary of the project site.

DeTray appealed the 2001 MDNS to the City hearing examiner. DeTray claimed that (1) the City could not show sufficient project-specific impacts justifying either condition; and (2) the dedicated access road requirement was contrary to the City's ordinances, which, for security reasons, "permit and encourage" private road access for mobile home parks.

## B. Hearing Examiner's Ruling

The City hearing examiner consolidated a hearing on DeTray's CUP applications with his 2001 MDNS appeal. On July 6, 2001, the hearing examiner (1) granted the CUP subject to conditions; (2) denied the Shoreline Master Program CUP; (3) required DeTray to move the proposed stormwater system outside the 200-foot Conservancy Environment; (4) affirmed the MDNS condition that DeTray dedicate land for the pedestrian trail; and (5) declared DeTray's appeal of the MDNS dedicated road condition moot because this condition was also imposed under the CUP.

## C. Abandoned Appeal of Hearing Examiner's Decision

DeTray appealed the hearing examiner's decision to the City Council, raising the following challenges: (1) the hearing examiner erroneously based his conclusion that the road dedication was permissible on his finding that the road was necessary to connect the Park with DeTray's other undeveloped property to the south; (2) the hearing examiner did not "particularize" the road's necessity to "specific characteristics of the site"; and (3) the evidence refuted, rather than supported, the hearing examiner's finding that

---

[3] In return, the City would credit DeTray's costs against required trail impact fees for his Park development.

the Park's elderly residents would use the trail sufficiently to justify the trail extension condition. Administrative Record (AR) at 318-19.

Less than one month later, DeTray withdrew this appeal. The next day, the City notified DeTray that the hearing examiner's July 6, 2001 decision, including all conditions, constituted the CUP for the Park.

## II. Second Application

Four months later, DeTray filed a "[m]odification" of his previous application for the Park.[4] This modified application described his "[n]ew proposed project" as a two-phase, 38-unit mobile home park, with three 20-unit, two-story, senior apartment buildings. It increased the number of dwelling units to 98 (from the original 55) and decreased the project site area to 11.90 acres (from the original 13.35 acres). AR at 228. DeTray's modified site plan incorporated the following changes, which satisfied the City's July 6, 2001 CUP conditions: (1) stormwater system relocation outside the Conservancy Environment, (2) dedication of public right-of-way access, and (3) extension and dedication of a 10-foot-wide county pedestrian trail.

## A. Amended MDNS; No Appeal

On March 7, 2002, the City's SEPA official issued an Amended MDNS (2002 MDNS). The 2002 MDNS noted in bold type that it was an amendment to the July 6, 2001 CUP and, except for reducing the number of mobile home units and adding apartment buildings,

> [a]ll other aspects of the proposed development either *remain[ed] the same* as in the original Conditional Use Permit application *or have been altered to meet the conditions imposed* by the Examiner in his decision dated July 6, 2001.

---

[4] In this modified application, DeTray referred to the Park as "Colonial Estates Phase 3 MHP and Retirement Apartments." AR at 228.

AR at 108 (emphases added). The 2002 MDNS concluded that this amendment to the 2001 CUP "probably will **not** have a significant adverse impact upon the environment." AR at 108.

The 2002 MDNS provided a 14-day appeal period. DeTray did not appeal.

## B. Amended 2002 CUP

Following a March 25, 2002 hearing on DeTray's request to amend the 2001 CUP, the City hearing examiner found that (1) the requested CUP amendment complied with the public road and trail extension conditions in the 2001 MDNS; and (2) except for the wetland buffer, all conditions imposed in the July 6, 2001 CUP "are either met by this amended proposal or are required to be met at a subsequent approval stage." AR at 38-39.

The hearing examiner concluded:

> The Applicant requests an amendment to the conditional use permit issued July 6, 2001. . . . *[T]he principal effect of the requested amendment is to add a trail segment and north-south street to comply with the 2001 permit* and to reduce the number of mobile home lots and add three two-story, 20-unit apartment buildings. ***The amendment is requested to the permit, not to an application for a permit*** . . . . As with any permit, the question for decision is whether the entire proposal complies with governing law. Thus, this review must examine not only the changes to the proposal approved in 2001, but also *whether those changes have affected the nature or impact of any features which are not changed by the amendment. All other features of the proposal, that is, those which are not changed or affected by the proposed amendments, remain governed by the 2001 permit.*

AR at 40 (emphases added). The hearing examiner granted the amended 2002 CUP on April 16, 2002, incorporating all conditions from his July 6, 2001 decision and CUP.

## C. Second Appeal to City Council

DeTray again appealed to the City Council. He challenged the hearing examiner's (1) failure to reduce the

wetland buffer in two locations, (2) procedure for imposing the SEPA MDNS conditions, and (3) conclusion that the amended 2002 CUP incorporated by reference all July 6, 2001 CUP conditions. Citing RCW 36.70C.130(1), DeTray also reiterated many of the same challenges he had previously raised in his abandoned appeal from the hearing examiner's July 6, 2001 decision and 2001 CUP conditions. He argued that (1) the City's authority to extract park fees and to credit the trail's cost toward those fees did not justify imposing the trail as a condition for development of the Park; (2) neither the MDNS nor the City's street standards justified the access road condition and related frontage improvements, which, he also argued, were unconstitutional under *Nollan* and *Dolan*;[5] and (3) both conditions are prohibited "taxes" under RCW 82.02.020 because neither is "reasonably necessary as a direct result of the proposed development." AR at 128-29.

The City Council affirmed the hearing examiner's April 16, 2002 decision and amended CUP. It concluded that (1) DeTray had failed to exhaust administrative remedies when he did not appeal the 2002 MDNS and related conditions; (2) res judicata barred his current appeal because he failed to make a "substantial change" in his modified Park development application relevant to the required conditions; and (3) the hearing examiner's incorporation of his July 6, 2001 CUP decision and conditions into the amended 2002 CUP did not allow DeTray to "reach back" to challenge the 2001 CUP conditions, which he had failed to appeal.

## D. LUPA Appeal to Superior Court

DeTray petitioned for judicial review under LUPA. The City moved for summary judgment on the following grounds: res judicata, collateral estoppel, and DeTray's

---

[5] *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994).

failure to exhaust administrative remedies (namely, failure to appeal the 2001 MDNS).

The superior court consolidated a hearing on the City's summary judgment motion and the merits of DeTray's LUPA appeal. Finding "no genuine issue as to any material fact," the superior court granted summary judgment to the City and denied DeTray's LUPA petition on its merits. Clerk's Papers at 258.

DeTray filed a notice of appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

■■ "A petition for review by the superior court constitutes appellate review on the administrative record before the local jurisdiction's body or officer with the highest level of authority to make the final determination." *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003) (citing *Citizens to Pres. Pioneer Park v. City of Mercer Island,* 106 Wn. App. 461, 470, 24 P.3d 1079 (2001)); *see also* RCW 36.70C.120(1).[6] Thus, we review the hearing examiner's record before the Olympia City Council to determine whether the facts and law support its land use decision. *City of Univ. Place v. McGuire,* 144 Wn.2d 640, 647, 30 P.3d 453 (2001).

■■ We review questions of law de novo. *Davidson v. Kitsap County*, 86 Wn. App. 673, 680, 937 P.2d 1309 (1997) (citations omitted). The central question here is one of law—whether res judicata bars DeTray's challenge to the

---

[6] RCW 36.70C.120(1) provides:

When the land use decision being reviewed was made by a quasi-judicial body or officer who made factual determinations in support of the decision and the parties to the quasi-judicial proceeding had an opportunity consistent with due process to make a record on the factual issues, judicial review of factual issues and the conclusions drawn from the factual issues shall be confined to the record created by the quasi-judicial body or officer.

CUP road and trail conditions the City imposed on his Park development application.

## II. Res Judicata

■ ■ In order to prevent repetitious litigation and to provide binding answers, the res judicata doctrine bars reasserting the same claim in a subsequent land use application.[7] *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 31, 891 P.2d 29 (1995) (citation omitted). Our Supreme Court has articulated a four-part[8] test to determine when a claim has been previously decided for purposes of res judicata:

> "Res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made."

*Hilltop*, 126 Wn.2d at 32 (quoting *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)).

Both parties agree that only the first factor, identity of subject matter, is in dispute here. Thus, we review de novo whether DeTray's appeal of the 2002 CUP conditions was a "repeated submission[ ] . . . involving the same subject matter" as his abandoned appeal of the 2001 CUP conditions. *Hilltop*, 126 Wn.2d at 31. We note at the outset that relevant case law addresses repeated applications, rather than repeated appeals; but we find this case law instructive nonetheless.

---

[7] " 'The law of res judicata . . . consists entirely of an elaboration of the obvious principle that a controversy should be resolved once, not more than once.' " *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995) (quoting 4 Kenneth Culp Davis, Administrative Law Treatise § 21:9, at 78 (2d ed. 1983)).

[8] DeTray proposes a fifth element—that res judicata must not work an injustice, citing *Hilltop* and *Davidson*. Br. of Appellant at 6. But this fifth element does not appear in either case, and the case DeTray later cites, *State v. Vasquez*, 148 Wn.2d 303, 59 P.3d 648 (2002), addresses collateral estoppel, not res judicata.

## A. Identity of Subject Matter

■ Our Supreme Court has stated that "subject matters are not identical [for purposes of res judicata] if they differ substantially." *Hilltop*, 126 Wn.2d at 32. Thus, "a second application may be considered if there is a *substantial change in circumstances or conditions relevant to the application* or a *substantial change in the application itself*." 126 Wn.2d at 33 (emphasis added). The *Hilltop* court does not, however, further define "substantial change." Thus, we look to the court's rationale and *Hilltop*'s progeny for guidance.

### 1. *Hilltop*

The *Hilltop* developer applied for a CUP "to construct a 150-foot steel lattice [microwave relay] tower with a 336-square-foot equipment storage shelter, surrounded by a chain link fence. The application envisaged the 150-foot lattice tower supporting six antennae and four microwave dishes." 126 Wn.2d at 25. Island County issued a SEPA determination of nonsignificance. Following a hearing, the hearing examiner recommended approval, subject to certain mitigating conditions. 126 Wn.2d at 26.

The Island County Board of County Commissioners (Board) rejected the hearing examiner's recommendation and denied the application. The Board reasoned that (1) the microwave tower's light-industrial character was incompatible with the " 'character of surrounding permitted uses' " and (2) the proposed mitigation measures would not provide adequate transition between the tower's incompatible use and the existing surrounding uses. *Hilltop*, 126 Wn.2d at 26.

The Board chairperson informed the developer that its decision was final, but if the developer " 'wish[ed] to reconsider [the] application, perhaps relocate it and/or provide for appropriate mitigation, [the developer] should not consider it a foregone conclusion that such an application would also be denied.' " *Hilltop*, 126 Wn.2d at 27. The

developer did not appeal the Board's decision within the prescribed time period.

Two months later, the developer filed a modified site plan for the same property. He again sought a CUP to build a 150-foot microwave relay tower. This time, however, he substituted a single pole tower for the previous lattice tower. As before, the application proposed a shed, a generator, and a pad. But this time, the developer had relocated these structures more toward the center of the parcel; he had also relocated the access road. *Hilltop*, 126 Wn.2d at 27.

The hearing examiner conducted a hearing on this " 're-application of a previous site plan.' " He noted that the differences in the new site plan were not significant, the pole would have less visual impact, and relocating the access road and construction site would " 'provide better buffering from adjoining properties.' " 126 Wn.2d at 27-28. The hearing examiner concluded, " *'Other than these changes,* the proposal is virtually identical' to the first proposal." 126 Wn.2d at 28.

The Board approved this second application, explaining that the developer had " 'made a real effort to mitigate from where they stood last time.' " *Hilltop*, 126 Wn.2d at 28-29. Surrounding homeowners filed a writ of review with the superior court. The trial court affirmed the Board's decision. 126 Wn.2d at 29.

On appeal, Division One of our court held that res judicata barred the developer's second application. 126 Wn.2d at 29. Our Supreme Court affirmed the Court of Appeals in part, holding that res judicata applies to quasi-judicial land use decisions. But the court also reversed in part, holding that the second application "substituted a fundamentally different kind of structure, completely re-routed the access road to the site, significantly increased setbacks, and changed the number and kind of antennae." The court declared that these "*changes in both design and function* in the second application *together* constitute a '*substantial change* in the application.' " *Hilltop*, 126 Wn.2d at 34 (emphases added).

## 2. *Davidson*

Division One of our court subsequently adopted the *Hilltop* rationale in *Davidson*, 86 Wn. App. 673. The *Davidson* developer sought to subdivide a 46-acre parcel into 18 single-family lots. 86 Wn. App. at 675. Initially, he proposed access to the subdivision from State Route 104. He later revised the plan to provide access from a county road that bisected an established neighboring subdivision. The neighboring subdivision residents vigorously objected to accessing the new subdivision from the county road. 86 Wn. App. at 676.

The County Board of Commissioners approved the plat on condition that access to the new subdivision be by some route other than the county road bisecting the neighboring subdivision. 86 Wn. App. at 677. The developer did not appeal. 86 Wn. App. at 677.

Four years later, the developer submitted a revised plat application for the same subdivision, increasing the density from 18 to 25 lots. 86 Wn. App. at 678. The developer again proposed access via the county road. The hearing examiner recommended approval, subject to the condition that if access to the subdivision was via the county road, the density should be reduced to 18 lots. The Board approved the developer's second application, but again it denied access from the county road. 86 Wn. App. at 679.

The developer sought a writ of certiorari to the superior court, which reversed the Board's denial of access via the county road. *Davidson*, 86 Wn. App. at 679-80. The County appealed.

The Court of Appeals recognized "various changes" to the developer's plat application, including

> an increase in density from 18 to 25 lots, an increase in the number of detention ponds, and an addition of a one-half mile of bioswales. There was also an increase in open space area, a decrease in the minimum lot size as well as the average lot size, and a transfer to Public Utility District water.

*Davidson*, 86 Wn. App. at 682. But the court held these modifications were not relevant to the "substantial change" analysis because only one modification, the increased density, affected the contested access condition, namely whether access to the proposed subdivision could be from the county road. 86 Wn. App. at 682.

The *Davidson* court distinguished *Hilltop* because the application's changes in *Hilltop mitigated* the adverse impacts of the original proposal. 86 Wn. App. at 682. In contrast, res judicata barred the *Davidson* developer's second application because (1) he had not appealed the earlier, alternate-access-road condition; (2) his second application retained the same county road access that had led to denial of his original application; (3) rather than ameliorating the deficiencies in his original application, his second application's increased density *exacerbated* the proposed subdivision's adverse impacts to the neighboring subdivision; and (4) therefore, there was no substantial change from his first application. *Davidson*, 86 Wn. App. at 682.

### 3. Summary

■ Neither *Hilltop* nor *Davidson* permits consideration of a new application based solely on significant changes to a proposal. Rather, the changes must be relevant to and resolve the disputed conditions in the previous application.

The *Hilltop* developer amended his original proposal to mitigate the problems the Board had previously cited for denial, i.e., incompatibility with surrounding uses. Even though the amended proposal remained "virtually identical" to the original proposal, the changes (relocating the tower, accompanying structures, and access road) resolved the core disputed issue of neighborhood compatibility. Therefore, these changes were "substantial," and res judicata did not apply. *Hilltop*, 126 Wn.2d at 28.

In contrast, the pivotal disputed issue in the original *Davidson* application was access to the proposed subdivision from a county road, which would have negatively

impacted a neighboring subdivision. Yet in his second application, Davidson persisted in seeking access from the same county road. The *Davidson* court focused on how the second application's increased density exacerbated the previous access problem.

But *Davidson* also embodies the principle that if changes in the second application (for essentially the same land use project) do not resolve, or at least mitigate the original application's disputed condition(s), then the second application's changes are not "substantial." Consequently, res judicata bars reasserting essentially the same previously rejected feature (the county access road) in a subsequent land use application. *See Hilltop*, 126 Wn.2d at 31.

## B. Application of *Hilltop* and *Davidson* to DeTray's CUP Appeal

Both the *Hilltop* and *Davidson* courts had to determine whether res judicata barred a second land use application for the same or similar land use proposal. As in *Hilltop*, DeTray's second application and site plan satisfied the conditions imposed on his original application. This fact does not end our inquiry, however, because although the City approved DeTray's revised application and granted an amended CUP, he tried to appeal these conditions.

Thus, the question we must answer is whether res judicata bars DeTray's second appeal, challenging the same conditions he had previously challenged, and then abandoned, in his earlier appeal from the 2001 CUP. To answer this question, we look to the *Hilltop* rule that res judicata does not apply when the second application presents a substantial change in both design and function and addresses the previously identified deficiencies.

As in *Hilltop*, DeTray could have substantially changed his revised development application to ameliorate the adverse impacts that the original CUP conditions were designed to correct. But he did not. On the contrary, the increased density of his revised proposal exacerbated the

negative impacts that the 2001 CUP road and trail conditions were designed to mitigate.

DeTray argues that because he made more changes to his original plan than did the developers in *Hilltop*, he must have made a sufficiently "substantial change." Appellant's Br. at 8. But the *Hilltop* court focused on qualitative, not quantitative, changes. The court noted that although the changes in the second *Hilltop* application were minor, they directly mitigated the incompatibility issues the Board had cited in denying the first application.

In contrast, as the trial court here astutely observed:

> In this case, there can be no debate that the changes made by DeTray constitute a substantial change. However, in my opinion, that is not the correct test. The correct test is whether there are substantial changes in the application which are relevant to the disputed issues sought to be barred by res judicata. To read the Hilltop Terrace holding as [DeTray] does is to render it meaningless as to the application of the doctrine of res judicata.

Report of Proceedings (Jan. 31, 2003) at 8.

DeTray's attempt to distinguish *Davidson* is also unpersuasive. We do not agree that the increased density in DeTray's revised proposal, which directly affected the need for the road and trail conditions, differs significantly from *Davidson*, where the increased density exacerbated the development's negative impact. Davidson's myriad changes to his plan did not sufficiently mitigate the imposed road condition there. Although DeTray's 2002 changes did address and ameliorate the problems underlying the 2001 CUP conditions, his attempt to challenge them on appeal, if successful, would put him in the same position as the *Davidson* developer: Reversal of the challenged CUP conditions would effectively undo the relevant mitigating changes in DeTray's second application. And, as in *Davidson*, the increased density in DeTray's revised application would exacerbate the negative impacts the CUP conditions were imposed to mitigate; thus, his second

application would not be a substantial change sufficient to defeat *Hilltop*'s and *Davidson*'s res judicata bar.[9]

■ We hold that, as in *Davidson*, DeTray's failure to appeal the 2001 CUP road and trail conditions rendered them final. Consequently, res judicata bars resurrecting his abandoned challenge in an appeal from the amended 2002 CUP,[10] which incorporated the unappealed conditions.[11] Accordingly, we affirm the City Council and the superior court's grant of summary judgment.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, A.C.J., and HOUGHTON, J., concur.

---

[9] We also reject DeTray's argument that because the Park is well within the density allowed by the zoning code, it cannot "exacerbate" a problem. That a land use proposal is within the permissible density bears no relationship to the City's conditioning approval of the application on necessary mitigating measures.

[10] Because we hold that res judicata bars DeTray's appeal, we do not address the City's arguments that (1) DeTray lacks standing to bring his LUPA petition for failure to exhaust his administrative remedies, RCW 36.70C.060(2)(d); (2) DeTray waived his claims; and (3) DeTray invited error, if any. Br. of Resp't at 24-28.

[11] Accordingly, it is too late for DeTray to argue, as he attempts in this appeal, that unlike *Davidson*, the City's conditions here are disproportionate. This substantive issue was appealable only from the 2001 MDNS and the 2001 CUP.